120 Cal.Rptr.2d 373 (2002)
98 Cal.App.4th 1322
George ROSEN, Plaintiff and Respondent,
v.
STATE FARM GENERAL INSURANCE COMPANY, Defendant and Appellant.
No. B146516.
Court of Appeal, Second District, Division One.
June 3, 2002.
Review Granted August 28, 2002.
*374 Robie & Matthai, Michael J. O'Neill, Pamela E. Dunn, Los Angeles, and Daniel J. Koes for Defendant and Appellant.
Verboon, Milstein & Peter, and Wayne S. Kreger for Plaintiff and Respondent.
SPENCER, P.J.
In this case of first impression, we are called upon to decide whether a homeowner's policy that expressly defines the term "collapse" as "actually fallen down or fallen into pieces" provides coverage for imminent collapse. We conclude that it does and affirm the judgment entered in favor of the homeowner.

STATEMENT OF FACTS[1]
Plaintiff George Rosen (Rosen) submitted a claim to his homeowner's insurance carrier, defendant State Farm General Insurance Company (State Farm), for the cost to repair two decks attached to his home in Palos Verdes Estates. Rosen decided to remove and repair the decks upon the recommendation of a contractor who discovered severe deterioration of the framing members supporting the decks. Rosen believed his decks were in a state of imminent collapse, entitling him to policy benefits.[2]
The "Losses Not Insured" section of Rosen's homeowner's policy expressly provided that State Farm did not insure for any loss to the dwelling caused by "collapse, except as specifically provided in SECTION IADDITIONAL COVERAGES, Collapse." The "Additional Coverages" section provided that "[t]he following Additional Coverages are subject to all the *375 terms, provisions, exclusions and conditions of this policy." Paragraph 11 pertained to "Collapse." It provided: "We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building. [¶] Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing." (Italics added.) Further, the collapse had to be attributable to one or more specifically enumerated perils or factors.[3]
State Farm ultimately denied Rosen's claim on two grounds, that the identified causes of loss were excluded from coverage as there had been no collapse of his decks within the meaning of the policy, and that by substantially repairing his decks prior to submitting his claim, Rosen prejudiced State Farm by depriving it of an opportunity to inspect the damage adequately.

PROCEDURAL BACKGROUND
On August 13,1999, after rejecting State Farm's offer to arbitrate, Rosen filed an action against State Farm, alleging causes of action for breach of contract and breach of the covenant of good faith and fair dealing. Rosen alleged that his decks were in a state of imminent collapse and that State Farm improperly denied his claim for the cost to repair his decks. In its answer filed on October 1, 1999, State Farm asserted as one of its affirmative defenses that Rosen's homeowner's policy did not provide coverage for his loss.
On May 8, 2000, State Farm filed a motion for summary judgment.[4] It argued that Rosen did not suffer a compensable loss because the decks actually did not collapse. Rosen opposed the motion, arguing there was a material factual issue as to whether his decks were in a state of imminent collapse. In addition, in reliance on Doheny West Homeowners' Assn. v. American Guarantee & Liability Ins. Co. (1997) 60 Cal.App.4th 400, 70 Cal.Rptr.2d 260 (Doheny ), Rosen maintained that public policy mandated that the collapse provision be construed to provide coverage for imminent collapse. The trial court denied State Farm's motion for summary judgment, concluding there were triable issues of material fact.
Prior to a bench trial, the parties agreed to try the case on a very narrow issue whether State Farm owed Rosen policy benefits due to the imminent collapse of his decks. The parties further stipulated that Rosen's contractor, Darrell Ewell, would be the only witness to testify and that contract damages for the repair of plaintiffs decks totaled $87,000.
*376 Following the trial, the court asked Rosen to submit a proposed order. Rosen submitted a proposed statement of decision to which State Farm objected on the ground, among others, that Rosen had mischaracterized the Doheny decision. After consideration of all of State Farm's objections, the trial court adopted Rosen's statement of decision. The court stated therein: "This is a case of first impression in the State of California: whether the public policy of this state requires a homeowner[`]s insurance policy to cover the imminent collapse of a deck or part of a deck when the policy defines collapse as actually fallen down and fallen into pieces. The court finds that such coverage is mandated and that coverage attaches, and accordingly finds for plaintiff."
The court further held that "Doheny West specifically applies to this case" and that "[t]he public policy of the State of California is therefore that policyholders are entitled to coverage for collapse as long as the collapse is imminent, irrespective of policy language." (Original italics.) The court refused to fashion a limitation that "encourage[d] property owners to place lives in danger in order to allow insurance carriers to delay payment of claims until the structure actually collapses." The court further observed that "[t]he narrow coverage provided by defendant's insurance policy should have no bearing on the broad coverage provided by the public policy of the State of California." Accordingly, the court entered judgment in favor of Rosen and against State Farm in the amount of $87,000 together with interest and costs. This appeal by State Farm followed.

ISSUE ON APPEAL
State Farm does not challenge the trial court's factual determination that Rosen's two decks were in a state of imminent collapse. State Farm challenges only the trial court's legal determination that the collapse provision in Rosen's homeowner's policy provided coverage for imminent collapse of his decks. For the reasons that follow, we conclude the trial court reached the correct result.

DISCUSSION

State Farm's Collapse Provision Provided Coverage Only for Actual Collapse.
The interpretation of an insurance policy and the scope of coverage involve questions of law. (Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619; Barnett v. Fireman's Fund Ins. Co. (2001) 90 Cal. App.4th 500, 508, 108 Cal.Rptr.2d 657.) Coverage clauses and exceptions to exclusions must be construed broadly to provide the insured with the greatest possible protection. (Vargas v. Athena Assurance Co. (2001) 95 Cal.App.4th 461, 465, 115 Cal. Rptr.2d 426; Meraz v. Farmers Ins. Exchange (2001) 92 Cal.App.4th 321, 324, 111 Cal.Rptr.2d 804.) In order to determine if coverage exists, we look first to the language of the policy. (Civ.Code, § 1638; Waller, supra, at p. 18, 44 Cal.Rptr.2d 370, 900 P.2d 619; American Star Ins. Co. v. Insurance Co. of the West (1991) 232 Cal. App.3d 1320, 1325, 284 Cal.Rptr. 45.)
The plain language of the collapse provision in Rosen's homeowner's policy is unambiguous, in that it is susceptible only of one reasonable interpretation-actual collapse of a building or a portion thereof is a prerequisite to an entitlement to policy benefits. By defining the term "collapse" to mean "actually fallen down or fallen into pieces," State Farm effectively removed any ambiguity in the term collapse. Under no stretch of the imagination does actually mean imminently.
*377 Because the collapse provision is clear and explicit, the contractual language controls. (Civ.Code, § 1638; Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at p. 18, 44 Cal.Rptr.2d 370, 900 P.2d 619.) No further construction is required. (American Star Ins. Co. v. Insurance Co. of the West, supra, 232 Cal.App.3d at pp. 1331-1332, 284 Cal.Rptr. 45.) Inasmuch as Rosen's decks did not actually collapse, State Farm owed Rosen no benefits under his homeowner's policy absent an overriding public policy that mandates such coverage.

Doheny Is Factually Inapposite
Doheny West Homeowner's Association (Doheny West) was a homeowner's association of a large condominium complex. The complex had three levels of enclosed parking on top of which were a deck, pool, hot tub and poolroom. A structural engineer, who inspected the pool and parking structure, advised Doheny West of significant damage to the parking structure, particularly around the pool vault, and recommended that the pool be emptied immediately. The engineer further advised that an earthquake could cause the pool to collapse completely. (Doheny, supra, 60 Cal.App.4th at pp. 402-403, 70 Cal.Rptr.2d 260.)
Doheny West repaired the pool and structure. It then tendered a claim to its insurer, defendant American Guarantee & Liability Insurance Group (American Guarantee), which denied the claim. Doheny West thereafter sued American Guarantee for breach of contract and bad faith, claiming that its loss was covered under the provision pertaining to additional coverage for collapse. (Doheny, supra, 60 Cal.App.4th at p. 403, 70 Cal.Rptr.2d 260.)
The policy that American Guarantee had issued to Doheny West excluded coverage for collapse except "`for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more'" specified perils or factors. The policy did not include a definition of the term "collapse." (Doheny, supra 60 Cal.App.4th at p. 402, 70 Cal. Rptr.2d 260.) Prior to trial, the court ruled that the policy provided coverage for actual or imminent collapse. (Id. at p. 403, 70 Cal.Rptr.2d 260.) At trial, the court found that Doheny West had failed to prove that any part of the building was in a state of imminent collapse and entered judgment for American General. (Ibid.)
On appeal, the Doheny court engaged in a lengthy discussion of the history of collapse coverage, contrasting "two general categories" of cases "with some courts adopting ... a narrow definition of `collapse,' and some adopting a broader one." (Doheny, supra, 60 Cal.App.4th at p. 404, 70 Cal.Rptr.2d 260.) Courts taking the narrow approach have construed the term "collapse" to mean actual collapse. Courts interpreting the term "collapse" broadly recognize that the narrow' approach "would require an insured seeking the benefits of its insurance coverage to neglect repairs and allow a building to fall, a course of action which could not possibly comport with the expectation and intent of the insured, or advance the best interests of the insured, the public, or even the insurer, if the actual collapse took place at a time which brought it under the insurer's coverage." (Id. at p. 404, 70 Cal.Rptr.2d 260.)
The Doheny court, noting that its task was not merely to construe the word "collapse" in isolation but rather to construe the total coverage clause, held that the coverage clause before it "cannot be said to be clear, explicit, and unambiguous, and thus must be interpreted to protect the objectively reasonable expectations of the insured. [Citation.]" (Doheny, supra, 60 *378 Cal.App.4th at p. 405, 70 Cal.Rptr.2d 260.) With these principles in mind, the court stated: "It is undisputed that the clause covers `collapse of a building,' that is, that there is coverage if a building falls down or caves in. However, the clause does not limit itself to `collapse of a building,' but covers `risk of loss,' that is, the threat of loss. Further, on its terms it covers not only loss resulting from an actual collapse, but loss `involving' collapse. Thus, with the phrases `risk of loss,' and `involving collapse,' the policy broadens coverage beyond actual collapse." (Ibid., fn. omitted.)
The Doheny court rejected Doheny West's assertion that "`substantial impairment of structural integrity'" was all that was necessary for coverage. The court noted that an insured purchasing the particular policy at issue would not reasonably have expected the policy to cover mere impairment of structural integrity. Moreover, the court found that the language of the policy, construed as a whole, did not support the interpretation urged by plaintiff. (Doheny, supra, 60 Cal.App.4th at p. 405, 70 Cal.Rptr.2d 260.) The court concluded that under the terms of the policy before it, "the damage must be such that it will lead to collapse." (Id. at p. 406, 70 Cal.Rptr.2d 260.) It agreed with the trial court's requirement that the collapse be actual or imminent. It noted that "[t]his construction of the policy avoids both the absurdity of requiring an insured to wait for a seriously damaged building to fall and the improper extension of coverage beyond the terms of the policy, and is consistent with the policy language and the reasonable expectations of the insured." (Ibid.)
It is a well-established rule that an opinion is only authority for those issues actually considered or decided. (Santisas v. Goodin (1998) 17 Cal.4th 599, 620, 71 Cal. Rptr.2d 830, 951 P.2d 399; Wilshire Ins. Co. v. Tuff Boy Holding, Inc. (2001) 86 Cal.App.4th 627, 639, 103 Cal.Rptr.2d 480.) At no time did the court in Doheny hold that an unambiguous collapse provision expressly limiting recovery to actual collapse must nevertheless be construed to provide coverage for imminent collapse. The court also did not purport to discern a public policy establishing a contractual entitlement to coverage for imminent collapse in all cases. It simply construed the ambiguous collapse provision before it, as it was required to do. (AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 822, 274 Cal. Rptr. 820, 799 P.2d 1253.) In so doing, it was required to resolve the ambiguity in favor of the insured and in accordance with the reasonable expectations of the insured. (Kazi v. State Farm Fire & Casualty Co. (2001) 24 Cal.4th 871, 879, 103 Cal.Rptr.2d 1,15 P.3d 223.)
In construing the collapse provision in Doheny to provide coverage for both actual and imminent collapse, the court expressly relied on the broad language of that particular policy. Specifically, the court held that the "phrases `risk of loss,' and `involving collapse'" effectively "broaden[ed] coverage beyond actual collapse." The State Farm collapse provision at issue in this case, however, does not contain any comparable language that can be construed to extend coverage beyond actual collapse.

Public Policy Nevertheless Mandates Coverage for Imminent Collapse
Notwithstanding the lack of ambiguity in State Farm's collapse provision, we hold, as a matter of public policy, that State Farm must provide insurance benefits for imminent collapse of Rosen's two decks. The notion that in the absence of coverage for imminent collapse an insured may wait until the full or partial actual collapse of a building simply to ensure *379 coverage is troubling indeed. The actual collapse of a building or any part of a building tragically can result in serious injury or loss of human life, as well as substantial property damage. A requirement that an insurer provide coverage when collapse is imminent clearly is in the best interests not only of the insured and the insured's visitors but also of the insurer. Rectifying the problem prior to an actual collapse may well save lives and money. Moreover, our holding does not unduly burden the insurer because its liability is limited for a loss which is imminent, and, thus, soon to occur anyway. Surely, an insurer's exposure to liability will be far greater in the event of an actual collapse.
Any holding to the contrary would encourage property owners to risk serious injury or death or greater property damage simply to ensure that coverage would attach. We cannot and will not sanction such a result. We therefore conclude that notwithstanding the language of the collapse provision, public policy mandates that State Farm afford Rosen coverage for the imminent collapse of his decks.[5] The trial court correctly determined the issue of coverage in favor of Rosen.
The judgment is affirmed.
We concur: ORTEGA and MALLANO, JJ.
NOTES
[1] This appeal does not involve a challenge to any factual determination made by the trial court. We therefore present an abbreviated factual statement, summarizing only those facts pertinent to an overall understanding of the events giving rise to this action.
[2] The parties have not limited their statements of fact to the evidence introduced at trial. They rely heavily on the evidence submitted in support of and in opposition to a motion for summary judgment filed by State Farm.
[3] Specifically, the policy provided that "[t]he collapse must be directly and immediately caused only by one or more of the following:

"a. perils described in SECTION I LOSSES INSURED, COVERAGE BPERSONAL PROPERTY. These perils apply to covered building and personal property for loss insured by this Additional Coverage;
"b. hidden decay of a supporting or weight-bearing structural member of the building;
"c. hidden insect or vermin damage to a structural member of the building;
"d. weight of contents, equipment, animals or people;
"e. weight of ice, snow, sleet or rain which collects on a roof; or
"f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building."
[4] In the alternative, State Farm moved for summary adjudication of Rosen's claim for breach of the covenant of good faith and fair dealing and his request for punitive damages. Prior to trial, Rosen dismissed these claims.
[5] We reject the notion advanced by State Farm that imposition of liability transfers the duty to maintain property from the property owner to State Farm and converts the policy into a maintenance agreement.