122 Cal.Rptr.2d 530 (2002)
100 Cal.App.4th 460
E.M.M.I. INC., Plaintiff and Appellant,
v.
ZURICH AMERICAN INSURANCE COMPANY, Defendant and Respondent.
No. B152740.
Court of Appeal, Second District, Division Five.
July 22, 2002.
Review Granted October 23, 2002.
*531 Quisenberry & Kabateck, John N. Quisenberry, Brian S. Kabateck, Heather M. Mason, Los Angeles, Suzanne L. Havens Beckman, and Jerilyn Jacobs for Plaintiff and Appellant.
Bishop, Barry, Howe, Haney & Ryder, Mark Koop, and Jay E. Framson for Defendant and Respondent.
TURNER, P.J.

I. INTRODUCTION
This appeal involves the question of whether a jeweler's block insurance policy provides coverage when an insured's employee is standing behind his car when the automobile, which contains jewelry, is driven away by a thief. E.M.M.I. Inc., doing business as Universal Fine Jewelry (plaintiff), appeals from a summary judgment in favor of Zurich American Insurance Company (defendant). Plaintiffs salesperson, Brian Callahan, was outside his car inspecting *532 a possible mechanical malfunction. The car, containing jewelry display cases, was stolen. The trial court concluded Mr. Callahan was not "actually in or upon" the car at the time of the theft, therefore, the jeweler's block insurance policy issued by defendant did not cover the loss. We agree. Accordingly, we affirm the judgment.

II. BACKGROUND
Jeweler's block insurance was conceived by Lloyds of London at the turn of the century. (JMP Associates, Inc. v. St. Paul Fire & Marine Ins. Co. (1997) 345 Md. 630, 693 A.2d 832, fn. 1; 70 N.Y.Jur.2d (1998) Insurance, § 1530; Annot., Construction and Effect of "Jeweler's Block" Policies or Provisions Contained Therein (1994) 22 A.L.R.5th 579, Summary.) Jeweler's block insurance differs from other property insurance. As the United States District Court explained in Star Diamond, Inc. v. Underwriters at Lloyd's, London (E.D.Va.1997) 965 F.Supp. 763, 765: "Jewelers' block insurance is different from most other traditional forms of property insurance which are considered `named-peril' insurance policies. Under named-peril policies, an insurer agrees to indemnify its insured for losses resulting from certain risks of loss or damage which are specifically enumerated within the provisions of the policy. In contrast, under a jewelers' block policy all risks of loss or damage to jewelry may be insured, subject to certain exceptions." (See 70 N.Y.Jur.2d, supra, Insurance, § 1530.)
The policy contained an exclusion and an exception to the exclusion as follows: "We will not pay for `loss' caused by or resulting from any of the following: [¶] ... Theft from any vehicle unless you, an employee, or other person whose sole duty is to attend the vehicle are actually in or upon such vehicle at the time of the theft." (Italics added.) This exclusion has long been included in jeweler's block insurance policies as evidenced by repeated discussions of it in the decisional authority cited below. Insurance coverage is claimed in this case under the exception to the exclusion.
Plaintiffs salesperson, Mr. Callahan, was traveling from his home to an appointment. He had two jewelry display cases locked in the trunk of his car. He heard a rattling noise coming from the rear of his automobile. He pulled to the side of the road and got out to inspect the source of the noise. He left the car running with the keys in the ignition. Mr. Callahan bent down to look at the tail-pipe area of his car. A man then brushed by Mr. Callahan. The unidentified man got into Mr. Callahan's car and drove away. The car was recovered, but the jewelry display cases were missing.
Defendant denied plaintiffs insurance claim on the ground Mr. Callahan was not "actually in or upon" his car at the time of the loss. Plaintiff filed this action against defendant for: contract breach; tortious breach of the implied covenant of good faith and fair dealing; and unfair business practices. The trial court granted defendant's summary judgment motion. Judgment was entered in favor of defendant. Plaintiff filed a timely notice of appeal.

III. DISCUSSION

A. Evidentiary Ruling
Plaintiff contends the trial court erred in sustaining defendant's objections to evidence presented in the summary judgment motion opposition. Plaintiff sought to introduce an "expert's" opinion, based on industry custom and practice, that coverage existed on two independent grounds. The first aspect of the proffered opinion *533 was that: Mr. Callahan was the victim of a Colombian jewelry theft ring; the commission of the theft began when the robbers tampered with Mr. Callahan's car; and therefore the unattended vehicle exclusion was not triggered. The second aspect of the opinion was that: Mr. Callahan was attending to the car at the time of the theft; hence, Mr. Callahan was "upon" the vehicle within the meaning of the policy. Plaintiff also sought to introduce deposition testimony of Mr. Callahan. Mr. Callahan had spoken to an unidentified Chicago police lieutenant and a "lead FBI agent." The unidentified lieutenant and the FBI agent expressed opinions concerning the robbery in their conversations with Mr. Callahan. The trial court disallowed the proffered evidence as "impermissibly speculative and nonspecific to the alleged incident."
We find no error. Opinion testimony of the type here regarding the scope, meaning, or interpretation of policy language is inappropriate. (Pieper v. Commercial Underwriters his. Co. (1997) 59 Cal.App.4th 1008, 1017, 69 Cal.Rptr.2d 551; Cooper Companies v. Transcontinental Ins. Co. (1995) 31 Cal.App.4th 1094, 1100, 37 Cal.Rptr.2d 508; Devin v. United Services Auto. Assn. (1992) 6 Cal.App.4th 1149, 1157-1158, fn. 5, 8 Cal.Rptr.2d 263; National Auto. & Casualty Ins. Co. v. Stewart (1990) 223 Cal.App.3d 452, 458-459, 272 Cal.Rptr. 625; Hartford Accident & Indemnity Co. v. Sequoia Ins. Co. (1989) 211 Cal.App.3d 1285, 1304-1305, 260 Cal.Rptr. 190; Suarez v. Life Ins. Co. of North America (1988) 206 Cal.App.3d 1396, 1406-1407, 254 Cal.Rptr. 377; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶¶ 4:13:15, 4:17-4:17.5.) In Pieper v. Commercial Underwriters his. Co., supra, 59 Cal.App.4th at page 1017, 69 Cal. Rptr.2d 551, for example, our colleagues in Division Three of this appellate district explained that opinion evidence as to the meaning of an insurance policy term was irrelevant. "[T]he objective reasonable interpretation of the insured would not depend on the views of so-called experts except to the extent these views represent the popular or common understanding of the term." (Ibid.) In National Auto. & Casualty Ins. Co. v. Stewart, supra, 223 Cal.App.3d at pages 458-459, 272 Cal.Rptr. 625, retired Presiding Justice John T. Racanelli noted, "The opinion of a linguist or other expert as to the meaning of the policy is irrelevant to the court's task of interpreting the policy as read and understood by a reasonable lay person [citations]." In the present case, opinion as to the meaning of the term "upon" based on industry custom and practice was irrelevant to the court's interpretation of the policy language.

B. Summary Judgment

1. Standard of Review
We apply the parties' summary judgment burdens of production described by the Supreme Court in Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 850-851, 107 Cal.Rptr.2d 841, 24 P.3d 493: "From commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.... [¶][T]he party moving for summary judgment bears an initial burden of *534 production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.... A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted; accord, Kids' Universe v. In2Labs (2002) 95 Cal.App.4th 870, 878,116 Cal.Rptr.2d 158.)
We review the trial court's decision to grant the summary judgment de novo. (Johnson v. City of Loma Linda (2000) 24 Cal.4th 61, 65, 67-68, 99 Cal.Rptr.2d 316, 5 P.3d 874; Sharon P. v. Arman, Ltd. (1999) 21 Cal.4th 1181, 1188, 91 Cal.Rptr.2d 35, 989 P.2d 121, disapproved on another point in Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at p. 853, fn. 19, 107 Cal.Rptr.2d 841, 24 P.3d 493.) Because there is no dispute as to any material fact, we construe the insurance policy and independently determine whether defendant is entitled to judgment as a matter of law. (Waller v. Truck Ins. Exchange (1995) 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619; State Farm Mut. Auto. Ins. Co. v. Partridge (1973) 10 Cal.3d 94, 100, 109 Cal.Rptr. 811, 514 P.2d 123; Nissel v. Certain Underwriters at Lloyd's of London (1998) 62 Cal.App.4th 1103, 1110, 73 Cal. Rptr.2d 174; Revesz v. Excess Ins. Co. (1973) 30 Cal.App.3d 125, 127, 106 Cal. Rptr. 166.)

2. Plaintiffs Arguments on Appeal
Plaintiffs contentions on appeal center on the construction of the term "upon" in the insurance policy. Plaintiff does not specifically assert that language is ambiguous. Moreover, plaintiff makes no claim as to the reasonable expectations of the insured.

3. Principles of Insurance Policy Interpretation
The interpretation of an insurance policy is a question of law. (Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at p. 18, 44 Cal.Rptr.2d 370, 900 P.2d 619; AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 818, 274 Cal.Rptr. 820, 799 P.2d 1253.) The ordinary rules of contract interpretation apply. (Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545; see AIU Ins. Co. v. Superior Court, supra, 51 Cal.3d at pp. 821-822, 274 Cal. Rptr. 820, 799 P.2d 1253.) As the Supreme Court explained in Bank of the West v. Superior Court, supra, 2 Cal.4th at pages 1264-1265, 10 Cal.Rptr.2d 538, 833 P.2d 545: "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ.Code, § 1638.) On the other hand, `[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' (Id., § 1649; see AIU, supra, 51 Cal.3d at p. 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, `the objectively reasonable expectations of the insured.' (AIU, supra, at p. 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) Only if this rule does not resolve the ambiguity do we then resolve it against the insurer. (See AIU, supra, at p. 822 [274 Cal.Rptr. 820, 799 P.2d 1253].)[¶] ... [A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively *535 reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. (Producers Dairy Delivery Co. v. Sentry Ins. Co. (1986) 41 Cal.3d 903, 916-917 & fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920].) This is because `language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' (Id. at p. 916, fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920], italics added; cf. Civ.Code, § 1641.)[¶] ... [P]olicy terms must be read in their `ordinary and popular sense' (Civ.Code § 1644; see also AIU, supra, 51 Cal.3d at p. 822 [274 Cal.Rptr. 820, 799 P.2d 1253]; cf. Reserve Ins. Co. v. Pisciotta (1982) 30 Cal.3d 800, 807 [180 Cal. Rptr. 628, 640 P.2d 764])...."
Similarly, in AIU Ins. Co. v. Superior Court, supra, 51 Cal.3d at pages 821-822, 274 Cal.Rptr. 820, 799 P.2d 1253, the Supreme Court set forth the principles of insurance policy interpretation as follows: "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ.Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (Id., § 1639.) The `clear and explicit' meaning of these provisions, interpreted in their `ordinary and popular sense,' unless `used by the parties in a technical sense or a special meaning is given to them by usage' (id., § 1644), controls judicial interpretation. (Id., § 1638.) Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning. (See, e.g., Reserve Insurance Co. v. Pisciotta [, supra,] 30 Cal.3d [at p.] 807 [180 Cal.Rptr. 628, 640 P.2d 764]; Crane v. State Farm Fire & Cas. Co. (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129].)[¶] If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. (Civ.Code, § 1649.) If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. (Id., § 1654.) In the insurance context, we generally resolve ambiguities in favor of coverage. (See, e.g., State Farm Mut. Auto. Ins. Co. v. Jacober (1973) 10 Cal.3d 193, 197 [110 Cal.Rptr. 1, 514 P.2d 953]; Bareno v. Employers Life Ins. Co. (1972) 7 Cal.3d 875, 878 [103 Cal.Rptr. 865, 500 P.2d 889]; Continental Casualty Co. v. Phoenix Constr. Co. (1956) 46 Cal.2d 423, 437 [296 P.2d 801].) Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured. (See, e.g., Garvey v. State Farm Fire & Casualty Co. (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704]; Reserve Insurance Co. v. Pisciotta, supra, 30 Cal.3d at p. 808 [180 Cal.Rptr. 628, 640 P.2d 764].) These rules stem from the fact that the insurer typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to bargain for modifications. (See, e.g., Garcia v. Truck Ins. Exchange (1984) 36 Cal.3d 426, 438 [204 Cal.Rptr. 435, 682 P.2d 1100]; Bareno. supra, 7 Cal.3d at p. 878 [103 Cal.Rptr. 865, 500 P.2d 889].) Because the insurer writes the policy, it is held `responsible' for ambiguous policy language, which is therefore construed in favor of coverage." (Fn.omitted.)
Ambiguity in the context of insurance policies was discussed in Waller v. Truck Ins. Exchange, supra, 11 Cal.4th at pages 18-19, 44 Cal.Rptr.2d 370, 900 P.2d 619 as follows: "A policy provision will be considered ambiguous when it is capable of *536 two or more constructions, both of which are reasonable. (Bay Cities Paving Grading, Inc. v. Lawyers' Mutual Insurance Co. (1993) 5 Cal.4th 854, 867 [21 Cal. Rptr.2d 691, 855 P.2d 1263].) But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. (Bank of the West, supra, 2 Cal.4th at p. 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) Courts will not strain to create an ambiguity where none exists. (Reserve Insurance, supra, 30 Cal.3d at p. 807 [180 Cal.Rptr. 628, 640 P.2d 764].)"
As noted above, this case requires us to construe an exception to an exclusionary clause. Exceptions to exclusions are broadly construed in favor of the insured. (Rosen v. State Farm General Ins. Co. (2002) 98 Cal.App.4th 1322, 1326, 120 Cal.Rptr.2d 373; Meraz v. Farmers Ins. Exchange (2001) 92 Cal.App.4th 321, 324, 111 Cal.Rptr.2d 804; National Union Fire Ins. Co. v. Lynette C. (1991) 228 Cal.App.3d 1073, 1079, 279 Cal.Rptr. 394.) Nevertheless, unambiguous policy language controls. (Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at p. 18, 44 Cal.Rptr.2d 370, 900 P.2d 619; Rosen v. State Farm General Ins. Co., supra, 98 Cal.App.4th at p. 1327, 120 Cal.Rptr.2d 373.)

4. Decisional Authority
Two California cases have considered the "actually in or upon" insurance policy language at issue here. Both are decisions of Division Three of the Court of Appeal for this appellate district. Both cases involved parked, unattended cars.
In Revesz v. Excess Ins. Co., supra, 30 Cal.App.3d at pages 126-129, 106 Cal.Rptr. 166, the Court of Appeal considered language in two "`salesman's floater'" insurance policies procured by the plaintiff, a jewelry salesperson. The facts were undisputed. In order to get directions, the plaintiff stopped and parked his car in front of a service station. Sample cases of jewelry were locked in the truck. The plaintiff had walked two or three feet away in search of directions when the car was stolen. One insurance policy contained a "`holdup and robbery endorsement'" which provided: "`In consideration of the premium for which this policy is written, ... coverage as granted by the policy shall not apply to any loss of or damage to merchandise: ... [¶] 3. whilst in or upon any automobile ... unless, at the time the loss or damage occurs, the assured is actually in or upon such vehicle and the merchandise is in his possession.' (Italics added.)" (Id. at p. 127, 106 Cal.Rptr. 166.) The second policy similarly excluded theft from an unoccupied vehicle: "`This policy does not insure loss of or damage to property .... [¶] 3) in or upon any automobile ... unless at the time the loss or damage occurs there is actually in or upon the vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle....' (Italics added.)" (Ibid.) The Court of Appeal concluded that under the facts before it, the word "upon" did not require interpretation. (Id. at pp. 128-129, 106 Cal. Rptr. 166.) The court held: "The controlling factors are not the time interval and the distance traveled but plaintiffs intent and conduct. Having parked his vehicle at the curb, locked the ignition, removed his keys, and left his vehicle for the purpose of seeking information, he had temporarily abandoned the vehicle. At the time of the loss the jewelry was not in his `personal custody' and he was not `actually in or upon' his vehicle, as required by the policies, in any sense of these words. The temporary abandonment is clearly evidenced by the fact that the thief was able to take possession of the vehicle and its *537 contents without interference from him. [¶] Our reasoning and conclusion are consistent with reported decisions construing these key words in policies insuring against loss of property from a vehicle; in each the insured was clearly absent from his vehicle at the time of loss; in each the court found that under the facts presented the words `actually in or upon' were not ambiguous; and in each the court placed great emphasis on the word `actually,' indicating that it clearly negates constructive presence and possession. (See Royce Furs, Inc. v. Home Insurance Company (1968) 30 App.Div.2d 238 [291 N.Y.S.2d 529]; Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co. (1951) 235 Minn. 243 [50 N.W.2d 629]; Greenberg v. Rhode Island Ins. Co. ([N.Y.App.Term.] 1946) 188 Misc. 23 [66 N.Y.S.2d 457].)" (Revesz v. Excess Ins. Co., supra, 30 Cal.App.3d at pp. 128-129,106 Cal.Rptr. 166.)
Plaintiff relies on Revesz's conclusion that, "The controlling factors are ... plaintiff's intent and conduct." (Revesz v. Excess Ins. Co., supra, 30 Cal.App.3d at pp. 128-129, 106 Cal.Rptr. 166.) We disagree with Revesz to the extent it so holds. The insurance policy says nothing about the insured's intent. That Mr. Callahan did not intend to abandon his vehicle is not relevant. We agree with Revesz's ultimate no coverage finding because the insured was clearly not actually in or upon the vehicle at the time of the theft.
In Nissel v. Certain Underwriters at Lloyd's of London, supra, 62 Cal.App.4th at page 1106, 73 Cal.Rptr.2d 174, a traveling sales representative parked his car in front of a restaurant. Two men stole a bag containing diamonds and other precious stones from the parked car. (Ibid.) The jeweler's block policy excluded thefts from an automobile unless, at the time of the loss, "`there is actually in or upon such vehicle, the Assured ..., or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle.'" (Id. at p. 1107, 73 Cal.Rptr.2d 174, italics added.) The insured made no claim that the provision was in any way unclear or ambiguous. (Id. at p. 1112, 73 Cal. Rptr.2d 174.) Our Division Three colleagues in an opinion authored by Associate Justice H. Walter Croskey, held that a theft "from an empty or unoccupied vehicle" fell within the policy exclusion; the employee was not actually in or upon the car when the loss occurred. (Id. at p. 1114, 73 Cal.Rptr.2d 174; see also Toff v. Atlas Assur. Co. (1943) 58 Cal.App.2d 696, 701, 137 P.2d 483 ["If he should not leave his jewelry in his unguarded car exposed to the hazards of theft, ... his coverage was complete; but if he did choose so to leave it, he had got what he bought"].)
Consistent with Revesz and Nissel, courts in other jurisdictions have regularly held that the "actually in or upon" language in a jeweler's block insurance policy excludes coverage for a theft from an automobile with no person in it. (Sphere Drake Ins. PLC v. Trisko (D.Minn.1998) 24 F.Supp.2d 985, 988, 991-996, affd. on other grds. (8th Cir.2000) 226 F.3d 951, 955-956 [outside the rental car but watching it]; Williams v. Fallaize Ins. Agency, Inc. (1996) 220 Ga.App. 411, 469 S.E.2d 752, 755 [insured was 25 feet from car and inside store]; American Stone Diamond, Inc. v. Lloyds of London (S.D.Tex.1996) 934 F.Supp. 839, 843-844 [inside service station paying for gas]; Tivoli Corp. v. Jewelers Mutual Ins. Co. (Tex.Ct.App. 1996) 932 S.W.2d 704, 710-711 [salesman was inside check cashing business]; Wideband Jewelry Corp. v. Sun Ins. Co. of New York, Inc. (N.Y.App.Div.1994) 210 A.D.2d 220, 619 N.Y.S.2d 339 [employee was six feet away from vehicle]; Jerome I. Silverman, Inc. v. Lloyd's Underwriters (S.D.N.Y.1976) 422 F.Supp. 89, 90 ["no loss *538 occurred while [manufacturer's representative] was in or around the automobile" and "immaterial whether [insured's representative] may have kept the car in sight"]; Steinzeig v. Mechanics & Traders Ins. Co. (Mo.Ct.App.1957) 297 S.W.2d 778, 782-783 [parked on street near salesperson's home]; Bliss Ring Co. v. Globe & Rutgers Fire Ins. Co. (1955) 7 Ill.App.2d 523, 129 N.E.2d 784, 788-789 [parked and went to coffee shop]; Seelig v. St. Paul Fire & Marine Ins. Co. (E.D.N.Y.1953) 109 F.Supp. 277, 279 [parked in a hotel garage]; Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co. (1951) 235 Minn. 243, 50 N.W.2d 629, 636 [parked for two to four minutes while sales representative was inside hotel]; Greenberg v. Rhode Island Ins. Co., supra, 66 N.Y.S.2d at pp. 458-459 [car parked on street while representative was in restaurant]; cf. Royce Furs, Inc. v. Home Ins. Co., supra, 30 A.D.2d at pp. 239-241, 291 N.Y.S.2d 529 [furrier's block insurance policy; car parked outside hotel]; see Annot., Construction and Effect of "Jeweler's Block" Policies or Provisions Contained Therein, supra, 22 A.L.R.5th 579, § 23.)
We do note though that in JMP Associates, Inc. v. St. Paul Fire & Marine Ins. Co., supra, 693 A.2d at pages 839-840, the Court of Appeals of Maryland held the word "on" in "in or on the vehicle" was ambiguous. The court remanded the matter for a trial to consider extrinsic evidence of the parties' intentions. (Id. at p. 840.) It is noteworthy, however, that the jeweler's block policy at issue in JMP Associates, Inc. did not include the word actually, but only "in or on." (Id. at p. 832.) Furthermore, in that case, the insurer conceded that for coverage to apply a person did not have to be actually physically situated on the car and could even walk four feet away to pay for gasoline at an outside booth; it was only when the employee went inside to pay for gasoline that he was no longer "on" the vehicle. (Id, at p. 840.) No such concession is present in this case.
Moreover, numerous courts have consistently opined that the exclusion is unambiguousthe insured or its employee must actually, in reality, literally, be in or on the automobile. (Sphere Drake Ins. PLC v. Trisko, supra, 24 F.Supp.2d at pp. 992-994; Williams v. Fallaize Ins. Agency, Inc., supra, 469 S.E.2d at p. 755; American Stone Diamond, Inc. v. Lloyds of London, supra, 934 F.Supp. at pp. 842-844; Greenberg v. Rhode Island Ins. Co., supra, 66 N.Y.S.2d at p. 459; Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co., supra, 50 N.W.2d at pp. 633, 636; cf. Royce Furs, Inc. v. Home his. Co., supra, 30 A.D.2d at pp. 240-241, 291 N.Y.S.2d 529; see Nissel v. Certain Underwriters at Lloyd's of London, supra, 62 Cal.App.4th at p. 1112, 73 Cal.Rptr.2d 174.) In American Stone Diamond, Inc. v. Lloyds of London, supra, 934 F.Supp. at page 843, for example, the federal district court noted: "Courts have consistently held nearly identical policy language to be unambiguous and, based upon such exclusions, have denied coverage to insureds who were not literally in or upon their vehicles at the time of the losses, even though the insureds may have been only a short distance away from the vehicle, watching the vehicle, or absent from the vehicle for only a short period of time. [Citations.]"
Sphere Drake Ins. PLC v. Trisko, supra, 24 F.Supp.2d 985, is similar to the present case. In Trisko, a jeweler's block policy was issued to the defendant. The defendant's employees placed suitcases containing insured property in the trunk of a rental car. They waited outside the car for 30 minutes. During that time they remained at or within 8 to 16 feet of the car. In addition, the employees, in the words of the court, "were vigilant in their *539 surveillance of the car, and the area immediately around it." (Id. at p. 988.) The federal district court held, applying Minnesota law, that the "actually in or upon" exception to coverage for theft from an automobile was clear and unambiguous. (Id. at pp. 992-994.) The court concluded, moreover, that coverage did not extend to a theft occurring while the employees were not physically in or upon the rental car, even if they were close to the automobile at the time. (Ibid.)
However, two courts in other jurisdictions have held that salespersons who were adjacent to automobiles and attending them when the losses occurred were actually in or upon the car within the meaning of a jeweler's block policy. (Star Diamond, Inc. v. Underwriters at Lloyd's, London, supra, 965 F.Supp. at pp. 767-768; Lackow v. Insurance Co. of North America (1976) 52 A.D.2d 579, 382 N.Y.S.2d 529; see 11 Couch on Insurance (3d ed.1998) § 154:74; 70 N.Y.Jur.2d, supra, Insurance, § 1530.) Neither Lackow nor Star Diamond, Inc. has been followed in any reported decision. These opinions appear to stand alone insofar as they construe the "actually in or upon" requirement as including close proximity to or attendance upon the vehicle.
In Lackow v. Insurance Co. of North America, supra, 52 A.D.2d at page 579, 382 N.Y.S.2d 529, the New York court held without analysis, "The assured's employee's position at the time of the robbery, at the rear of the vehicle opening its trunk, was in compliance with the `Jeweler's Block Policy' provision that he be `actually in or upon such vehicle' at the time of the loss (cf. Kinscherf Co., Inc. v. St. Paul Fire & Marine Ins. Co. [(1931)] 234 App. Div. 385, 254 N.Y.S. 382; Royce Furs v. Home Ins. Co., 30 A.D.2d 238, 291 N.Y.S.2d 529.)" William Kinscherf Co., cited in Lackow, concerned a policy excepting, "`Loss or damage to property insured hereunder whilst in or upon any automobile, motorcycle or horse drawn vehicle unless such conveyance is attended at the time the loss occurs by a permanent employee of the assured.'" (William Kinscherf Co. v. St. Paul Fire & Marine Ins. Co., supra, 234 A.D. at p. 386, 254 N.Y.S. 382, italics added.) The New York court held, without citation to authority, "[The policy] language can only be interpreted to mean that if the permanent employee of the plaintiff is not actually within or on the automobile, or so near thereto as to be able to observe a theft of the contents, he shall not be deemed to be in attendance at the time the loss occurs." (Ibid.) William Kinscherf Co. is distinguishable from Lackow as well as the present case insofar as the insurance policy covered attended vehicles. Royce Furs, Inc., also cited in Lackow, held the "actually in or upon" exclusion in a Furrier's Block insurance policy was applicable where "[t]he plaintiffs representative was not in the automobile, but was far enough from it to have given the thief the opportunity to enter the car." (Royce Furs, Inc. v. Home Ins. Co., supra, 30 A.D.2d at p. 241, 291 N.Y.S.2d 529.) Royce Furs, Inc. did not hold a person was upon a vehicle within the meaning of the insurance policy so long as he or she was close to it. In short, neither William Kinscherf Co. nor Royce Furs, Inc., is persuasive authority for the proposition announced in Lackow.
In Star Diamond, Inc., supra, a company president placed his stock of diamonds in a knapsack and put the knapsack on the floor behind the front seat of his car. (Star Diamond, Inc. v. Underwriters at Lloyd's, London, supra, 965 F.Supp. at p. 764.) He was at a gas station, attempting to refuel the vehicle, and not more than nine inches from his car when the knapsack was stolen. (Ibid.) The United States District Court held: the use of the disjunctive *540 "or" between the terms "in" and "upon" means coverage is not conditioned solely on the insured being "`actually in'" the vehicle at the time of the loss; the ordinary meaning of "`upon'" included "`in or into close proximity or contact with'"; therefore, "`upon'" encompassed "situations where the insured is actually attending to his vehicle to facilitate the transport of insured property." (Id. at p. 767.) The federal court further concluded: "`Upon' should thus include instances where the insured exits his vehicle to tend to the insured property in the back seat or trunk, change a tire or refuel his vehicle, and is physically adjacent to and attending to the vehicle." (Ibid.) As noted above, Star Diamond, Inc. has not been followed in any reported decision.

5. Application to the Present Case
We find the provision in question is unambiguous. In its ordinary and popular usage (Civ.Code, § 1644; Bank of the West v. Superior Court, supra, 2 Cal.4th at p. 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545), "upon" is interchangeable with "on." (E.g., Newbury House Online Diet. (1999) http://nhd.heinle.com/nhd-bin/ searchNHD.pl>; Merriam-Webster's Collegiate Diet. (10th ed.1995) p. 1298; Webster's New World Diet. (3d college ed.1991) p. 1466; Oxford English Diet. Online (2d ed.1989) http://dictionary.oed.com >, upon, prep.; American Heritage Diet. (2d college ed.1985) p. 1328.) Webster's New World Dictionary, supra, at page 1466 defines "upon" as follows, "[O]n (in various senses), or up and on: on and upon are generally interchangeable, the choice being governed by idiom, sentence rhythm, etc." "On" can mean "in close proximity with," as in "a village [on] the sea," or "stay [on] your opponent." (Merriam Webster's Collegiate Diet., supra, p. 811.) "Upon" can also mean "in or into close proximity or contact with" as in "the enemy is [upon] us," or "despondency fell [upon] me." (Webster's 3d New Internat. Dict. (1981) p. 2517.) But we have not found any definition of "on" or "upon" that includes in close proximity to a car. (See Webster's 3d New Internat. Dict., supra, p. 1574 ["on" is "used as a function word to indicate presence within," as in "rode there [on] a train," or "booked passage [on] an ocean liner"].)
As noted above, the "in or upon" or "in or on" language has appeared in jeweler's block insurance policies since the early 1900s. Viewed from a historical perspective, and keeping in mind the interchangeable use of the language at issue (e.g., Newbury House Online Diet., supra, http://nhd.heinle.com/nhd-bin/ searchNHD.pl>; Merriam Webster's Collegiate Diet., supra, p. 1298; Webster's New World Diet., supra, p. 1466; Oxford English Diet. Online, supra, http:dictionary.oed.com >, upon, prep.; American Heritage Diet., supra, p. 1328), the words "on" or "upon" (as opposed to "in") would logically and unambiguously apply to a horse or a horse-drawn carriage. One would be upon rather than in a horse or carriage. In modern times, the words "on" or "upon" would apply to a motorcycle. In the ordinary sense of the words, whether one is "on" or "upon" a vehicle means the same thing; the usage varies with the object.
The use of the word "actually" is also significant. Several courts have noted that use of the word "actually," as here, belies any argument that the exclusion can be avoided when the insured is in close proximity to the car or is watching it. (E.g., American Stone Diamond, Inc. v. Lloyds of London, supra, 934 F.Supp. at p. 843; Greenberg v. Rhode Island Ins. Co., supra, 66 N.Y.S.2d at p. 459; Royce Furs, Inc. v. Home Ins. Co., supra, 30 A.D.2d at p. 240, *541 291 N.Y.S.2d 529.) In Greenberg, supra, the New York court stated: "`Actual' means that which exists in fact or reality, in contrast to that which is constructive, theoretical or speculative. [Citation.] [¶] We must give due recognition to the use of the word `actually' and must conclude it was inserted and intended for a definite purposeto indicate the intention that presence in realitypresence in factwas required and not a constructive or theoretical one." (Greenberg v. Rhode Island Ins. Co., supra, 66 N.Y.S.2d at p. 459.)
Here, the insurer excluded theft from an automobile unless the insured or its employee was "actually in or upon," i.e. on, the vehicle. The language clearly required actual presence in or upon, i.e., on, the car. Further, the plain meaning of the clause is consistent with its purpose. As courts in other jurisdictions have explained, the purpose of the provision is to cover a loss by theft from a car in the presence of someone in or upon it, that is, theft by force or intimidation directed at those present, but not by stealth alone. (Star Diamond Inc. v. Underwriters at Lloyd's, London, supra, 965 F.Supp. at p. 767 ["purpose of deterring theft ... underlies the unattended automobile exception"]; American Stone Diamond, Inc. v. Lloyds of London, supra, 934 F.Supp. at p. 846 ["effect of the exclusion in most ... cases would seem to be to insure against theft by force or intimidation, but not by stealth"]; Royce Furs, Inc. v. Home Ins. Co., supra, 30 A.D.2d at p. 241, 291 N.Y.S.2d 529 ["The plaintiffs representative was not in the automobile, but was far enough from it to have given the thief the opportunity to enter the car"]; Seelig v. St. Paul Fire & Marine Ins. Co., supra, 109 F.Supp. at p. 279 [purpose of policy "was to cover a loss occurring in connection with the hold up of a motor vehicle" while being operated by insured's employee]; Princess Ring Co. v. Home Ins. Co. (1932) 52 R.I. 481, 161 A. 292, 293, affd. (R.I.1932) 163 A. 181 ["`opportunity makes the thief"]; Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co., supra, 50 N.W.2d at p. 635 [insurer required actual presence in or upon vehicle as deterrent to potential thief].) The insurer could reasonably decide that the actual presence of someone in or upon the car would likely deter a thief, while the absence of an actual presence in or upon, i.e. on, the unoccupied automobile offers an opportunity to a criminal intent upon theft. (Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co., supra, 50 N.W.2d at p. 635.) As the court in Princess Ring Co. v. Home Ins. Co., supra, 161 A. at page 293 put it, "`Opportunity makes the thief.' If Mr. Mark had been in the automobile, probably the thief would not have entered." Simply put, when the insured or its employee exits the car, for any reason, the risk of a theft increases. Under the plain language of the provision, theft from an automobile in which no person is actually present is the risk excepted. (Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co., supra, 50 N.W.2d at p. 635.) That is precisely what occurred in this case. Although Mr. Callahan was in close proximity to the car, he was not actually in or upon it. The thief seized the moment of Mr. Callahan's absence from the car to steal it.
Plaintiff cites uninsured motorist cases for the proposition that "upon" a vehicle includes in close proximity to it. (Utah Home Fire Ins. Co. v. Fireman's Fund Ins. Co. (1970) 14 Cal.App.3d 50, 54, 91 Cal.Rptr. 781; Cocking v. State Farm Mut. Automobile Ins. Co. (1970) 6 Cal. App.3d 965, 968-971, 86 Cal.Rptr. 193.) In those cases, however, the insurance policy was construed in light of the public policy underlying uninsured motorist insurance "to provide compensation for those injured by the use of automobiles and through no *542 fault of their own...." (Cocking v. State Farm Mut. Automobile Ins. Co., supra, 6 Cal.App.3d at p. 969, 86 Cal.Rptr. 193; Utah Home Fire Ins. Co. v. Fireman's Fund Ins. Co., supra, 14 Cal.App.3d at pp. 53-54, 91 Cal.Rptr. 781.) The public policy underlying uninsured motorist insurance has no application to the present case. As a result, we decline to apply uninsured motorist cases in construing the present policy.
Further, plaintiffs reliance on Centennial Ins. Co. v. Schneider (9th Cir.1957) 247 F.2d 491, 495, is misplaced. Plaintiff asserts Centennial Ins. Co. established that the exclusion at issue is inapplicable so long as the insured or its employee keeps the car in "`clear sight.'" We disagree with plaintiffs' characterization of Centennial Ins. Co. In Centennial Ins. Co., the insured argued jewelry was stolen from the trunk of his car while he was sitting in heavy traffic rather than when he was outside the automobile talking with a buyer. The Ninth Circuit panel found, as a question of fact, that the theft of the jewelry occurred when the insured's vehicle was unoccupied. Further, the Ninth Circuit concluded the district court judge erred in concluding otherwise. The court stated in part: "Centennial has shown by the testimony of the [insured] himself that he could not see his car clearly at all times when he was out of it. This overcomes [the insured's] assertion that the theft was committed while [he] was in the car as he could observe the car at all times and no one removed anything from the trunk while he watched it." (Ibid.) Centennial Ins. Co. did not hold that the "actually in or upon" exclusion was avoided so long as the insured kept the car in clear sight.

IV. DISPOSITION
The judgment is affirmed. Defendant, Zurich American Insurance Company, is to recover its costs on appeal from plaintiff, E.M.M.I. Inc., doing business as Universal Fine Jewelry.
We concur: GRIGNON and MOSK, JJ.