Burke, J.
Plaintiff, a retail jeweler, sustained a loss of $22,045.69—the result of a fire in its premises. Defendant insurance company resisted payment of the claim made under a jewelers’ block policy issued to plaintiff.
In this action to recover the loss, defendant’s answer set forth five affirmative defenses based upon breaches of warranties contained in the proposal, or application for the jewelers’ block policy. This proposal was annexed to and made a part of the insurance contract. Although plaintiff, the insured, does not dispute that these warranties were breached, it claims that the defenses are ineffectual to preclude recovery where the loss sustained occurs, as here, as the result of fire. In this instance, it is urged, the standard fire insurance policy (Insurance Law, § 168, subd. 6), which does not include the warranties, is controlling, and is incorporated into the jewelers’ block policy.
Accordingly, at the trial, the plaintiff moved to strike these defenses. This motion was denied. Similarly, at the close of the evidence, it requested the court to charge that section 168 of the Insurance Law is incorporated into the fire feature of this policy. This request too was refused, and the question of breaches of the warranties was submitted to the jury.
The jury returned a verdict for the insurer, and a judgment dismissing the complaint was entered thereon. The Appellate Division reversed, and ordered a new trial.
*482 Section 46 of the Insurance Law reads, in part, as follows: ‘ ‘ The kinds of insurance which may be authorized in this state, subject to the other provisions of this chapter, are set forth in the following paragraphs. * * * 4. ‘ Fire Insurance,’ meaning insurance against loss of or damage to any property resulting from fire, including loss or damage incident to the extinguishment of a fire or to the salvaging of property in connection therewith. * * * 20. ‘ Marine Insurance,’ meaning insurance against any and all kinds of loss or damage to: * * * (c) Precious stones, jewels, jewelry, gold, silver and other precious metals, whether used in business or trade or otherwise and whether the same he in course of transportation or otherwise ”.
Under a jewelers’ block policy then all risks of loss or damage to jewelry may be insured. Hence, insurance against loss by fire is one of the risks which may be covered by this type of marine policy. A reading of the next paragraph of subdivision 20, which expressly excludes such fire losses in particular types of marine policies under some circumstances (Insurance Law, § 46, subd. 20, par. [d]), supports this conclusion.
In section 46 the Legislature has enumerated and defined the different kinds of insurance which may be underwritten in this State. The section clearly indicates that fire insurance and marine insurance are two different types of insurance. Since this is so, we find no legislative mandate requiring marine insurance contracts, insofar as they cover loss by fire, to comply with the statutory fire insurance provisions of section 168 of the Insurance Law.
The inception and history of the jewelers’ block policy also points to this conclusion. The idea was conceived by a Lloyds of London underwriter at the turn of the century. Many American jewelers availed themselves of this policy since it provided them with the only adequate coverage for the various risks inherent in their businesses. The inadequacy of coverage offered to jewelers by domestic insurance companies was highlighted by the Superintendent of Insurance in urging the passing of legislation permitting jewelers ’ block insurance. ‘ Under the American System, a jeweler insuring property in specific locations must get a standard form of policy against fire from a fire company, and also, a second policy from a fire company *483 which will include those coverages not contained in the standard form. He must obtain a policy from a casualty company, also a policy from a surety company, and a policy from a marine company if the property is to be transported, and then he is not covered as fully as he would be under the Lloyds policy.” (65th Annual Report of Superintendent of Insurance, N. Y. Legis. Doc., 1924, No. 21, p. 15.)
A block policy, then, as understood by the jewelers, by the insurance underwriters, by the Superintendent of Insurance, and by the Legislature, was not a combination of various risks united in one policy for convenience, but was, in reality, a new and totally different kind of insurance which was not authorized prior to the passage of the permissive legislation. Indeed, if this type of insurance were considered merely a combination of risks, there would have been no need for the enactment. It was precisely because combination policies were inadequate to serve the interests of jewelers that this new insurance was allowed. Hence, those cases cited by the plaintiff, dealing as they do with true combination policies (American Sur. Co. v. Rosenthal, 206 Misc. 485, affd. 1 A D 2d 652; International Ind. Co. v. Duncan, 254 S. W. 233 [Tex.] ; Hartford Fire Ins. Co. v. Owens, 272 S. W. 611 [Tex.]), are inapposite.
A comparison of the fire protection given by the standard fire policy and the Lloyds jewelers’ block policy indicates that the former is not incorporated into the latter.
Although the fire coverage feature of the block policy is optional, in that the insured may exclude this coverage, as a practical matter, the jewelers’ block policy includes the risk of loss by fire. The option is given to the insured to exclude it. Of course, standing alone this is but meager evidence to support a construction that the provisions of the fire policy are not incorporated into the block policy. But there are other considerations which militate against a contrary conclusion.
Thus, while the basic fire insurance rating bureau rates are used in determining the premium to be paid for the fire coverage, the actual rates are based upon the amount of inventory in unprotected areas. That percentage of jewelry which is stored, for example, in safes, receives the benefit of reduced rates. Hence the cost of the fire coverage may be substantially less than ordinary fire insurance rates where a large percentage of the inventory is stored in protected areas.
*484 Finally, the standard fire policy insures against direct loss by fire of property at the location named in the policy. (Insurance Law, § 168, subd. 6.) The block policy coverage is more extensive, providing for both direct and indirect loss by fire, and is not confined to loss in a particular location.
Yermes Credit Jewelry v. Fireman’s Fund Ins. Co. (92 F. Supp. 905, affd. 185 F. 2d 142) lends no assistance to plaintiff. Although the factual pattern in Yermes is not significantly different from the case sub judice, the court there was obliged to consider the block policy in the light of a general Minnesota law, which authorized the writing of personal property floater risks and inland marine risks, and established the financial requirements for companies engaged in underwriting this type of insurance. (Minn. Stat. Ann., § 60.29.) Section 65.011 (formerly § 65.01) of the Minnesota laws sets forth that State’s standard fire insurance policy. The next section (§ 65.02) exempted motor vehicle insurance against loss or damage by fire from the requirements of former section 65.01, when other risks were also included in the same policy. The court reasoned that, if the jewelers’ block policy were similarly exempted, that exemption too would appear in the legislation. Consequently, it held that under Minnesota law the standard fire policy was incorporated into the block policy. To overcome this court decision, the Minnesota Legislature soon thereafter enacted appropriate legislation (Minn. Stat. Ann., § 65.02).
Our insurance law is not comparable to the Minnesota statutes. The intent of our Legislature was clearly expressed by its exhaustive definition of the different kinds of insurance. Section 46 (subd. 20, par. [c]) of the Insurance Law specifically permits all risk insurance on jewelry, whether in transportation or not.
We, therefore, are of the opinion that the provisions of the standard fire insurance policy are not incorporated into the jewelers’ block policy.
Accordingly, the order of the Appellate Division should be reversed, and the judgment of Trial Term reinstated, with costs in this court and in the Appellate Division.
Chief Judge Conway and Judges Desmond, Dye, Fuld, Froessel and Van Voorhis concur.
Ordered accordingly.