STAR DIAMOND, INC., Plaintiff,

· v.

UNDERWRITERS AT LLOYD'S,
LONDON, Defendant.

Civil Action No. 96–1159–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 21, 1997.

Robert James Beagan, Flinn & Beagan, Vienna, VA, for Plaintiff.

Mark White Byrum, Jr., Cunningham & Associates, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter comes before the Court on defendant's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Plaintiff Star Diamond, Inc. ("Star") commenced this breach of contract action after defendant Underwriters at Lloyd's London ("Lloyd's") denied Star's claim under an insurance policy with Lloyd's for the loss Star sustained when its stock of approximately $100,000 worth of diamonds disappeared from an automobile driven by Star's president, Nitin K. Parikh ("Parikh").

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Star is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Chantilly, Virginia. Lloyd's is a syndicate of underwriters operating pursuant to an agreement entered under the laws of Great Britain.

The material facts underlying the loss are not in dispute. Star is engaged in business as a supplier of diamonds and precious stones to jewelry stores. For the sum of $6,300.00, Star purchased the "jewelers' block" insurance policy at issue from Lloyd's on or about December 7, 1995. The policy insured against all risks of loss or damage to the jewelry with certain exceptions and was in effect at the time of the loss. On the afternoon of April 9, 1996, Parikh left his home in Chantilly, Virginia to call upon one of his customers in Washington, D.C. Accompanying Parikh on this day was his brother-in-law, Dipak Shah. Parikh kept his stock of diamonds in a small box which he carried in a black knapsack. After meeting with the customer, Parikh returned to the car and placed the knapsack on the floor behind the front seat of the car. Parikh and Shah then began their return trip to Chantilly. Parikh recalls asking Shah to check the rear of the automobile to confirm the presence of the knapsack during the course of their trip on Interstate 66. Shah responded that the knapsack was present. The two men continued to a shopping center in Hermdon, Virginia. Upon arriving at the center, Parikh dropped Shah off in front of a photo store and Shah exited the car without the knapsack.

After Shah exited the car, Parikh continued to a nearby gas station. The station was crowded and Parikh had to wait behind several vehicles before a pump was available for his use. While he was waiting, Parikh did not exit his car. Once a pump was free, Parikh parked his car, turned off the engine, exited his car and walked to the rear of the driver's side of his car where the pump was located. As he approached to the pump, he bumped into his car several times and that at no time was he more than nine inches from his car. When Parikh reached the pump, he inserted a credit card into the pump several times in an attempt to authorize his purchase electronically. During this time, Parikh had his back turned toward his car. Ultimately, the pump indicated that Parikh should "see attendant." Parikh estimated that from the time he exited his car until the point at which he saw the "see attendant" message, approximately three to five minutes had elapsed. After he saw the message, Parikh turned back to his car and opened the rear driver's side door to retrieve his knapsack before walking to the attendant's booth. When he opened the door, Parikh discovered that his knapsack was missing. Upon making this discovery, Parikh went to the attendant, informed him that his knapsack was missing and asked the attendant to call the police. Neither Parikh nor anyone in the vicinity of his car saw anyone approach his car or remove anything from the car between the time Parikh exited his car and the time he discovered the knapsack missing.

On April 10, 1996, Star's insurance broker submitted a claim to Lloyd's for the loss. Subsequently, Parikh was examined under oath by counsel for Lloyd's concerning the

events that formed the basis of his claim. On July 26, 1996, Lloyd's issued a letter to Star denying coverage for the April 9, 1996 loss pursuant to two separate exclusion clauses in its policy. The clauses provide in pertinent part:

A. This Insurance does not insure against loss or damage directly or indirectly caused by or resulting from:

iii) unexplained or mysterious loss.

B. This Insurance does not insure loss of or damage to property:

I) while in or upon any automobile, motorcycle or any other vehicle unless, at the time the loss or damage occurs, there is actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle.

On August 23, 1996, Star commenced this lawsuit in United States District Court alleging that it had complied with all the terms and conditions under the policy and that Lloyd's refusal to pay Star's claim was a breach of the insurance contract.

Summary judgment is appropriate when there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Unsupported speculation is not enough to withstand a motion for summary judgment. *Ash v. United Parcel Service, Inc.*, 800 F.2d 409, 411–412 (4th Cir. 1986). Both parties have thoroughly briefed and argued this matter. There are no genuine disputes as to any material facts and this case is ripe for summary judgment.

■ The jewelers' block policy that Star purchased from Lloyds has been available to sellers of precious stones since about the turn of the century. *Woods Patchogue Corp. v. Franklin National Ins.*, 5 N.Y.2d 479, 186 N.Y.S.2d 42, 158 N.E.2d 710 (1959). Jewelers' block insurance is different from most other traditional forms of property insurance which are considered "named-peril" insurance policies. Under named-peril policies, an insurer agrees to indemnify its insured for losses resulting from certain risks of loss or damage which are specifically enumerated within the provisions of the policy. In contrast, under a jewelers' block policy all risks of loss or damage to jewelry may be insured, subject to certain exceptions.

In construing insurance policies, the Court follows the established rule that where language of the policy is susceptible to two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer. *White Tire Dist. v. Pennsylvania Nat'l Mut.*, 235 Va. 439, 441, 367 S.E.2d 518, 519 (1988)(quoting *Central Surety & Ins. Corp. v. Elder*, 204 Va. 192, 197, 129 S.E.2d 651, 655 (1963)). However, where the language of an insurance policy is unambiguous, the Court gives the words their ordinary meaning and enforces the policy as written. *Atlas Underwriters, Ltd. v. Meredith–Burda, Inc.*, 231 Va. 255, 259, 343 S.E.2d 65, 68 (1986). Moreover, as with all "written contracts, every part of the writing must be made, if possible, to take effect, and every word must be made to operate in some shape or other." *Tate v. Tate's Executor*, 75 Va. 522, 527 (1881).

Although jewelers' block insurance has been in existence for many years, no reported authority in Virginia has considered a jewelers' block policy or the two exclusions at issue here: (1) the "unattended automobile" exclusion and (2) the "unexplained loss or mysterious disappearance" exclusion. Other jurisdictions, however, have considered unattended automobile exclusion clauses with identical language.

In *Wideband Jewelry Corp. v. Sun Ins. Co. of New York,* 210 A.D.2d 220, 619 N.Y.S.2d 339 (1994), the insured's jewelry samples were covered under a jewelers' block policy. While the insured's employee was standing approximately six feet from his vehicle, thieves opened the trunk and stole over $250,000 worth of jewelry samples. The policy excluded coverage for a loss sustained by "theft from any vehicle unless you, an employee, or other person whose duty is to attend the vehicle are actually in or upon such vehicle at the time of the theft." *Id.* Given the distance between the insured's employee and the vehicle, the Court concluded that coverage was properly denied because the insured was not "actually in or upon" the vehicle at the time of the theft.

Similarly, in *Jerome I. Silverman, Inc. v. Lloyd's Underwriters,* 422 F.Supp. 89 (S.D.N.Y.1976), the insured had in the trunk of his car jewelry samples that were covered under a jewelers' block policy. The insured asked a parking attendant to watch his vehicle while he called upon customers in the area. After leaving his car for several minutes, the insured returned to find his samples missing. The insured argued that his car was in his sight when he visited his customers. The court rejected the insured's constructive possession argument in light of the policy's requirement that the insured or his representative be "actually in or upon" the vehicle at the time of the loss.

In *Revesz v. Excess Ins. Co.,* 30 Cal.App.3d 125, 106 Cal.Rptr. 166 (1973), plaintiff, a jewelry salesman, insured his samples under a jewelers' block policy with an unattended automobile exception that excluded coverage unless the insured or his employee was "actually in or upon" the vehicle at the time of the loss. While calling upon customers, plaintiff stopped at a service station to ask for directions. Plaintiff parked his car, locked his ignition and took his keys with him. Thirty seconds after exiting his car, and while plaintiff was still within two to three feet of his car, plaintiff turned and saw an unidentified man steal his car. The car was subsequently discovered with the jewelry samples missing. Plaintiff contended that the phrase "actually in or upon" should have

been construed reasonably "as meaning 'in or about' or 'in close proximity to' his vehicle while the insured is engaged in work incidental to loading, unloading or transporting jewelry." *Id.* 106 Cal.Rptr. at 167. The Court held that the facts presented did not require it to interpret the term "upon" because by parking his vehicle at the curb, locking the ignition, removing his keys and leaving the car for purposes of seeking directions, plaintiff had temporarily abandoned his vehicle. As a result, the Court held the coverage was properly denied.

In *Royce Furs. Inc. v. The Home Ins. Co.,* 30 A.D.2d 238, 291 N.Y.S.2d 529 (1968), plaintiff was a furrier whose stock was covered under a "furrier's block" policy, similar in pertinent part to a jewelers' block policy. While traveling with a number of furs in the trunk of his car, the insured stopped at a hotel. After registering, which took several minutes, the insured started to walk back to his car when a man got into his car and drove off. The theft occurred in a few seconds. Plaintiff argued that the exclusion did not apply because its representative was not too far from the vehicle and had it under surveillance. The court found the language of the exclusion to be clear and unambiguous in its requirement that plaintiff's representative be "actually in or upon" the vehicle at the time of the loss. The court noted that "in almost every instance where similar causes have been considered by the courts, coverage was denied where ... the insured ... was not in or upon the car...." *Id.* 291 N.Y.S.2d at 531. Based on an analysis of the authorities and the language of the policy, the court concluded that coverage was properly denied.

*Ruvelson v. St. Paul Fire & Marine Ins. Co.,* 235 Minn. 243, 50 N.W.2d 629 (1951), involved similar facts. In *Ruvelson,* the insured's jewelry samples were covered under a jewelers' block policy with an unattended automobile exclusion. At the time of the loss, the insured had locked the samples in a suitcase in his car before he entered a hotel. After spending approximately two to four minutes in the hotel, the insured returned to his car to find that unknowns person had broken his car window and stolen the sam-

ples. Finding that the insured or its representative was not "actually in or upon" the vehicle at the time of the loss, the court held coverage was properly denied.

■ In each of the foregoing cases, the insured had temporarily abandoned, walked away or diverted his attention from the vehicle containing the insured property at the time when the loss occurred. These cases differ from the facts of this case. Here, the insured remained inches from his vehicle after he exited and was attending to his vehicle at the time the loss occurred.

The language of the unattended automobile exception in Star's policy is unambiguous. The policy states that coverage is excluded for any loss or damage to property occurring while "in or upon any automobile, motorcycle or any other vehicle unless, at the time the loss or damage occurs, there is actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle." It is not disputed that Parikh was not " actually ... in" the car when the loss occurred. The plaintiff contends that Parikh was "actually ... upon" his car when the loss occurred. In response, Lloyd's argues that when the insured leaves his vehicle without removing the insured property, he assumes the risk of loss or damage to such property under the unattended automobile exception. In effect, Lloyd's contends that Parikh must have been "actually in" his vehicle along with the insured property to fall outside the unattended automobile exception.

■ Defendant's interpretation is unsupported by the plain meaning of the exception. Indeed, this interpretation ignores the applicability of the term "upon" altogether. During oral argument, counsel for Lloyd's suggested that term "upon" was included to permit the exception to apply where the insured property was being transported by motorcycle. By implication, therefore, Lloyd's contends that the term "upon" does not apply wherever it is physically possible for the insured to be "in" the vehicle with the insured property. However, the use of the disjunctive "or" between the terms "in" and "upon" results in both terms modifying "vehicle." If Lloyd's wished to condition coverage

on the requirement that the insured be "actually in" the vehicle at the time of the loss, it could easily have drafted the exception to achieve this result. It did not.

Moreover, accepting Lloyd's interpretation of the exception's language results in the insured losing coverage whenever he is not inside the vehicle containing the insured property regardless of how long he is outside the vehicle, where he is in relation to the vehicle and the reason why he is outside the vehicle. Such an interpretation would result in a denial of coverage for a loss occurring when the insured stepped out of his vehicle to open a rear door or the trunk of his car to retrieve the insured property. Coverage would also be denied when the insured was compelled to step out of his car to refuel or to change a flat tire on a busy highway. For these reasons, defendant's interpretation must be rejected.

■ In order to determine whether Parikh was "upon" his vehicle when the loss occurred, the Court gives this term its ordinary meaning. *Atlas Underwriters*, 231 Va. at 259, 343 S.E.2d at 68. Webster's defines the term "upon," *inter alia*, as "in or into close proximity or contact with." *Webster's Third New International Dictionary*, 2518 (1981). This definition must, however, be considered with regard to the purpose of deterring theft that underlies the unattended automobile exception. *See, e.g., Princess Ring Co., Inc. v. Home Ins. Co.*, 52 R.I. 481, 161 A. 292, 293 (1932)(quoted in *Royce*, 291 N.Y.S.2d at 531)(the insured and insured property must be in or upon the vehicle because "opportunity makes the thief"). Accordingly, the Court finds that the term "upon" encompasses situations where the insured is actually attending to his vehicle to facilitate the transport of insured property. "Upon" should thus include instances where the insured exits his vehicle to tend to the insured property in the back seat or trunk, change a tire or refuel his vehicle, and is physically adjacent to and attending to the vehicle. Under this definition, it is clear that Parikh was "actually upon" his vehicle when the loss occurred. He had exited his vehicle solely to refuel it and was standing no more than nine inches

from his vehicle attempting to refuel it when the loss occurred. For these reasons, Lloyd's motion for summary judgment on the unattended automobile exception should be denied.

Defendant's second ground for denying coverage is based on the "unexplained loss or mysterious disappearance" exclusion. The exclusion in Star's policy simply states that "the insurance does not insure against loss or damage directly or indirectly caused by or resulting from ... unexplained loss or mysterious disappearance." Several cases have considered similar exclusions under similar circumstances.

In *Gurfein Bros., Inc. v. The Hanover Ins. Co.,* No. 95–100406 (N.Y.Sup.Ct. Sept. 30, 1996), the insured, a diamond merchant, was covered under a jewelers' block policy. The insured's employee was traveling by car with his stock of diamonds. When the employee reached his final destination, he noticed that the bag in which he had been carrying his stock of diamonds was missing. The insurer denied plaintiff's claim for indemnification for the loss on the ground that coverage for this loss was excluded under the mysterious disappearance or unexplained loss clause in the insured's policy. The court found that the record was "devoid of proof as to the exact manner in which plaintiffs' goods were lost or disappeared ... [and that there was not] any proof of theft or forcible robbery." As a result, the court held that the insurer properly denied coverage.

Similarly, in *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.,* 179 A.D.2d 388, 578 N.Y.S.2d 551 (1992), *aff'd,* 80 N.Y.2d 986, 592 N.Y.S.2d 645, 607 N.E.2d 792 (1992), the insured, a jewelry company, was covered under a jewelers' block policy. During a business trip, the insured's president realized that a bag containing jewelry was missing but could not determine where or how the loss occurred. When the insured filed its claim for indemnification, the insurer denied coverage under the mysterious disappearance or unexplained loss exclusion. The court held that coverage was properly denied because the exclusion was designed to apply to losses "for which the insured can furnish no explanation whatsoever...." *Id.*

Finally, in *Levine v. Accident & Casualty Ins. Co.,* 203 Misc. 135, 112 N.Y.S.2d 397 (Mun.Ct.1952), the insured sought to recover on a theft policy for the loss of a diamond ring. The policy defined theft, *inter alia,* as a "mysterious disappearance" of any insured property. Plaintiff alleged that he went to the restroom and before washing his hands, removed the ring and placed it on the washstand. He dried his hands and forgot to retrieve his ring before he left the restroom. Plaintiff did not realize that the ring was missing until the next morning. He was certain that he had left the ring on the washstand and that it did not fall down the drain. Defendant denied coverage and contended that the loss was not mysterious because the plaintiff definitely placed the ring on the washstand and left it there. The court disagreed and reasoned that

> [o]f course there is no mystery about the placing of the ring; however, there is a mystery as to its disappearance. What happened to the ring after the plaintiff walked out and left it at the washstand is unknown and unexplainable. The fact that he remembers he left it at the washstand does not explain the disappearance. What happened to the ring after it was placed on the washstand is a mystery. The disappearance of the ring has never been explained.

*Id.* 112 N.Y.S.2d at 401. On this basis, the court held that the disappearance was mysterious under the terms of the policy.

These cases reached the same result that must obtain in the instant case. While there is no authority in this jurisdiction directly on point, a fundamental rule of contract construction provides guidance. Virginia adheres to the "plain meaning" rule: "[w]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself...." *Berry v. Klinger,* 225 Va. 201, 208, 300 S.E.2d 792 (1983). Star argues that when theft is the most probable inference that can be drawn from facts surrounding the disappearance of the property, the loss is not a mysterious disappearance. However, this argument ignores the plain meaning of the

terms "mysterious" and "unexplained." Webster's defines mysterious as "difficult or impossible to understand" and unexplained as "not explained or accounted for." *Webster's* at 1496, 2494. The circumstances surrounding the loss of Star's diamonds could not be described more accurately. Parikh cannot explain how his knapsack disappeared from the rear of his car. He can only say that his knapsack was in the back of his car on Interstate 66 and that it was gone sometime later when he looked for it at the service station. Parikh does not know when or how the knapsack disappeared. In sum, there is a mystery regarding how the knapsack disappeared from Parikh's car. It is a mystery that Parikh cannot explain. In this regard, Star's contention that theft is the most probable cause of the disappearance is nothing more than unsupported speculation. Such speculation is insufficient to withstand a motion for summary judgment. *Ash,* 800 F.2d at 411–412. For these reasons, defendant properly denied coverage based on the mysterious disappearance or unexplained loss exception and therefore, defendant's motion for summary judgment should be granted.

An appropriate order shall issue.

## ORDER

This matter comes before the Court on defendant's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons stated in the accompanying memorandum opinion, it is hereby

ORDERED that defendant's motion is GRANTED and this case is DISMISSED.