# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-3152

A.M.I. DIAMONDS COMPANY,

*Plaintiff-Appellant,*

v.

HANOVER INSURANCE COMPANY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 7959—**Samuel Der-Yeghiayan**, *Judge.*

_____

ARGUED JANUARY 18, 2005—DECIDED FEBRUARY 8, 2005

_____

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* Wholesale jewelry salesman Maged Soliman, after a sales visit to a retail jewelry store in a Chicago suburb, stopped at a gas station to phone his office. He was careful to park his car just steps away from the station's pay phone because in a briefcase wedged between the driver's and front passenger's seats were more than $100,000 worth of finished diamonds. After finishing his phone call Soliman opened the door of the car on the driver's side to get back in when he was distracted by a young woman in a minivan a few feet away who asked him for help with directions. He walked over to her, keeping his car with its precious cargo in sight. But when he reached

her, she dropped the map she was holding in her hand and he stooped to pick it up. At that moment he lost sight of the car and an accomplice of the woman stole the diamonds, which were never recovered. The thieves had probably kept watch on the retail jewelry store, identified Soliman as a wholesale jewelry salesman, and followed him from the store to the gas station.

Hanover Insurance Company had issued to Soliman's employer, A.M.I. Diamonds, what is called a "Jewelers' Block Policy," a standard insurance policy that protects jewelers against a broad range of risks of loss or damage. *E.M.M.I. Inc. v. Zurich American Ins. Co.*, 84 P.3d 385, 388-89 (Cal. 2004); *Woods Patchogue Corp. v. Franklin National Ins. Co.*, 158 N.E.2d 710, 712-13 (N.Y. 1959); 1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 1:57 (3d ed. 1997 and supp. 2004). If, however, the diamonds are lost "while in or upon any vehicle," coverage is forfeited unless "at the time the loss occurs, there is actually in or upon such vehicle . . . a permanent employee of the Insured" and "the property insured is in the close personal custody and under the direct control of [the employee]." Hanover refused to pay A.M.I.'s claim and A.M.I. brought this diversity suit, governed by Illinois law. The district judge granted summary judgment for the insurer.

Neither party has bothered to consider the purpose of the exclusions on which the judge based his decision, and as a result have treated us to a parade of absurdities. A.M.I. argues that Soliman, even when he was bending over to pick up the map, was "in or upon" his car because he had not abandoned it, and Hanover ripostes that yes, he had *temporarily* abandoned it. See *Revesz v. Excess Ins. Co.*, 106 Cal. Rptr. 166, 168 (App. 1973). Hanover contends that the terms "in or upon" must be interpreted literally, but inconsistently it concedes that had Soliman merely been

filling his gas tank when the diamonds were stolen he would have been "in or upon" his car—"*actually* in or upon" his car. *Star Diamond, Inc. v. Underwriters at Lloyd's*, 965 F. Supp. 763, 767-68 (E.D. Va. 1997); cf. *JMP Associates, Inc. v. St. Paul Fire & Marine Ins. Co.*, 693 A.2d 832, 839-40 (Md. 1997). Hanover further represents to us that if, while driving, Soliman had left the diamonds in full view on the passenger seat beside him and had picked up a hitchhiker who proceeded to steal the diamonds, the loss would be covered by the policy, but if they were stolen from his locked trunk or even from the kind of secret compartment in which drug couriers conceal illegal drugs, the loss would not be covered because the diamonds would then not have been in his "direct custody."

The purpose of the exclusions is twofold: to curb what is called "moral hazard" and to limit coverage in high-risk settings even when there is no moral hazard. Moral hazard refers to the effect of insurance in causing the insured to relax the care he takes to safeguard his property because the loss will be borne in whole or part by the insurance company. *May Department Stores Co. v. Federal Ins. Co.*, 305 F.3d 597, 601 (7th Cir. 2002); Alma Cohen & Rajeev Dehejia, "The Effect of Automobile Insurance and Accident Liability Laws on Traffic Fatalities," 47 *J.L. & Econ.* 357 (2004); Steven Shavell, "On Moral Hazard and Insurance," 93 *Q. J. Econ.* 541 (1979). (The policy in this case had a $100,000 limit.) It is the reason insurance companies will not insure property for more than the property is worth. Soliman was careless in failing to lock his door when he left his car, instead relying on his ability to keep it in sight and rush to the rescue of the diamonds if he saw someone trying to purloin them. *Saritejdiam, Inc. v. Excess Ins. Co.*, 971 F.2d 910, 912 (2d Cir. 1992); *Tivoli Corp. v. Jewelers Mutual Ins. Co.*, 932 S.W.2d 704, 707, 710-11 (Tex. App. 1996); *Revesz v. Excess*

*Ins. Co., supra*, 106 Cal. Rptr. at 168; see *Transnational Ins. Co.*, 785 N.E.2d 816, 817 (Ohio App. 2003); *Starfire Diamond Rings, Ltd. v. Angel* [1962] 2 Lloyd's Rep. 217, 218. His employer's failure to equip him with a cellphone was also careless, but probably did not contribute to the theft, which did not occur while he was at the pay phone—though if he'd been calling on a cellphone from within the car he might not have left the car to help the damsel in apparent distress, as distinct from walking over to her when he was already outside the car, having left it to use the pay phone.

Even if there were no moral hazard, an insurer might want to exclude coverage in especially risky situations; more precisely, the insured might agree to accept less coverage in exchange for a reduced premium. Suppose Soliman had an unforeseen heart attack while driving his diamond-laden car, was removed unconscious from the car by paramedics, and the diamonds disappeared. He would not be at fault, but the policy would not cover the loss, for when the theft occurred he would neither have been "actually in or upon" the car nor have had the diamonds in his personal custody. See *Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co.*, 50 N.W.2d 629 (Minn. 1951); cf. *Starfire Diamond Rings, Ltd. v. Angel, supra*.

We have identified the purposes of the exclusions; but as is often the case with contracts and statutes, the text is not written in terms of its purposes, and in such a case the task for the court is to interpret the text in light of its purposes. We can begin by setting aside "or upon," an archaic reference to open vehicles (the Jeweler's Block Policy dates from the beginning of the twentieth century, *E.M.M.I. Inc. v. Zurich American Ins. Co., supra*, 84 P.3d at 388-89; *Woods Patchogue Corp. v. Franklin National Ins. Co., supra*, 158 N.E.2d at 712-13; 1 Russ & Segalla, *supra*, § 1:57), such as the early automobile ("horseless carriage"), which had no roof.

*William Kinscherf Co. v. St. Paul Fire & Marine Ins. Co.*, 254 N.Y.S. 382, 383 (App. Div. 1931) (per curiam); *E.M.M.I. Inc. v. Zurich American Ins. Co.*, *supra*, 84 P.3d at 402 (dissenting opinion); but see *Star Diamond, Inc. v. Underwriters at Lloyd's, supra*, 965 F. Supp. at 767. Hanover was correct to concede, though it does violence to the policy language, that Soliman would have been "actually in" his car if he had locked it and then refueled and gotten back in. There would be no moral hazard—a driver needs gas whether or not the property he is carrying in the car is insured, and most gas pumps nowadays are self-service—and the risk of robbery or other theft would be little if any greater than if he had been stopped at a traffic light. A salesman who makes his rounds in a car, as most salesmen do, cannot avoid stopping from time to time to refuel, so the insurance policy would have a gaping hole in it if coverage were suspended whenever the salesman was refueling. It is different if he stops for lunch. For he is leaving the car unattended, and should either take the briefcase containing the diamonds with him or, better perhaps—now that there are highly effective auto alarm systems and some cars come equipped with cryptographic keys that block thieves from starting the engine even if it could be hotwired—lock it in the trunk. But it would be absurd to insist that when he leaves his car merely to refuel he take the briefcase with him, holding it in one hand while he fills the gas tank with the other.

But Soliman left the car unattended for an optional reason, without clutching the briefcase or locking it in the trunk—without even locking the car. By leaving the car as he did, he no longer was "actually in" the vehicle even in an extended sense and he no longer had personal custody of the diamonds. His effort to keep his eye on the car was a pathetic effort at precaution, when he could have locked the car with a twist of his wrist. His carelessness, and the risky

situation that it created, are just the reasons why the policy contains the exclusions that it does, although, presumably for the sake of precision, the policy does not contain a general exclusion for "carelessness" by the insured or the insured's agents.

The approach that we've sketched, which relates the meaning of "actually in or upon" to its purpose, is consistent with the cases, e.g., *Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co.*, *supra*, 50 N.W.2d at 633-34; *Princess Ring Co. v. Home Ins. Co.*, 161 A. 292 (R.I. 1932); *Williams v. Fallaize Ins. Agency, Inc.*, 469 S.E.2d 752, 755 (Ga. App. 1996); *Royce Furs, Inc. v. Home Ins. Co.*, 291 N.Y.S.2d 529 (App. Div. 1968); *Star Diamond, Inc. v. Underwriters at Lloyd's*, *supra*, 965 F. Supp. at 767, with the exception of *E.M.M.I. Inc. v Zurich American Ins. Co.*, *supra*. The salesman in that case was driving with the jewelry in the trunk when he heard a clanking sound in the rear of the car. He stopped without locking the car or turning off the engine, got out, walked to the rear, crouched down to inspect the exhaust pipe—and as he did so someone got in and drove the car away. The court thought the policy ambiguous because of "or upon," missing the point that the phrase is a vestige of an era of open vehicles. The court may also have been influenced by the fact that it was an unusual case, in which both the element of moral hazard and the risk of theft were minimal. In this case they were not.

*E.M.M.I.* is an outlier. To read "upon" to mean "near" would open a large loophole of uncertain limits, something the cases we've cited, and others as well, such as *Thomas Noe, Inc. v. Homestead Ins. Co.*, 173 F.3d 581, 583 (6th Cir. 1999); *Equity Diamond Brokers, Inc. v. Transnational Ins. Co.*, 785 N.E.2d 816, 819-20 (Ohio App. 2003), and *Nissel v. Certain Underwriters at Lloyd's of London*, 73 Cal. Rptr. 2d 174, 181 (App. 1998), have refused to do. Remember, too, that "in

or upon" is used twice in the policy exclusion: once with the diamonds as a subject (the diamonds must be "in or upon" the vehicle) and once with the salesman as the subject. If "in or upon" is given the same meaning in both places, and "upon" means "near," then the exclusion is inapplicable if the diamonds are merely near the vehicle, and not in it—which would be preposterous.

AFFIRMED.

A true Copy:

      Teste:

                       _____
                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*