**BANCORPSOUTH, INCORPORATED, Plaintiff-Appellant,**

v.

**FEDERAL INSURANCE COMPANY, Defendant-Appellee.**

No. 17-1425

United States Court of Appeals, Seventh Circuit.

Argued September 7, 2017

Decided October 12, 2017

Rehearing and Rehearing En Banc Denied November 14, 2017*

* Circuit Judge Joel M. Flaum did not participate in the consideration of the petition for rehearing en banc.

Lawrence J. Bracken, II, Attorney, HUNTON & WILLIAMS LLP, Atlanta, GA, Michael S. Levine, Esq., Attorney, HUNTON & WILLIAMS LLP, Washington, DC, Christina L. Fugate, Attorney, Derek Read Molter, Attorney, ICE MILLER LLP, Indianapolis, IN, for Plaintiff-Appellant.

Christopher A. Wadley, Attorney, WALKER WILCOX MATOUSEK LLP, Chicago, IL, for Defendant-Appellee.

Before WOOD, Chief Judge, and BAUER and SYKES, Circuit Judges.

BAUER, Circuit Judge.

On May 18, 2010, Shane Swift filed a class action lawsuit on behalf of himself and others similarly situated against BancorpSouth, Incorporated ("Bancorp") in the Northern District of Florida based upon its assessment and collection of excessive overdraft fees. On February 24, 2016, Bancorp and Swift entered into a settlement agreement wherein Bancorp agreed to pay $24 million to the settlement class. Bancorp had previously notified its insurer, Federal Insurance Company ("Federal"), that it sought coverage for defending the lawsuit, and eventually, to indemnify the settlement costs. Federal denied all coverage, and consequently, Bancorp filed a complaint against Federal alleging breach of contract, as well as bad faith denial of coverage. Federal filed a motion to dismiss the complaint, citing an exclusion of coverage in their policy with Bancorp for any claim "based upon, arising from, or in consequence of any fees or charges." The district court granted Federal's motion to dismiss, and Bancorp appealed. We affirm.

## I. BACKGROUND

Bancorp, a Mississippi corporation, is a financial institution which provides, among other things, checking and savings accounts to individuals. In November of 2009, Bancorp purchased a bankers' professional liability insurance policy from Federal. The first paragraph of the policy, titled "Insuring Clause," outlined Federal's obligation under the policy:

[Federal] shall pay, on behalf of an Insured, Loss on account of any Claim first made against such Insured during the Policy Period ... for a Wrongful Act committed by an Insured or any person for whose acts the Insured is legally liable while performing Professional Services, including failure to perform Professional Services.

Under the policy, a "Claim" is defined, *inter alia*, as a "written demand for monetary damages," or "a civil proceeding commenced by the service of a complaint or similar pleading" brought on behalf of a customer. "Loss" is defined as "the amount that an Insured becomes legally obligated to pay on account of any covered Claim," which includes both settlement costs, as well as "Defense Costs" or attorneys' fees. The policy also contained a number of exclusions from coverage, only one of which is relevant here. The relevant exclusion stated that Federal "shall not be liable for Loss on account of any Claim ... based upon, arising from, or in conse-

quence of any fees or charges" ("Exclusion 3(n)").

On May 18, 2010, Shane Swift, on behalf of himself and others similarly situated, filed a lawsuit against Bancorp in the Northern District of Florida ("Swift Complaint"). The Swift Complaint's opening allegation stated: "This is a civil action seeking monetary damages, restitution and declaratory relief from [Bancorp] arising from its unfair and unconscionable assessment and collection of excessive overdraft fees." The Swift Complaint alleged that Bancorp maximized the amount of overdraft fees it could charge customers through a variety of means, policies, and procedures. First, according to the Swift Complaint, Bancorp reordered debits from highest to lowest, instead of chronologically. Second, Bancorp failed to provide accurate balance information, and purposefully delayed posting transactions. Third, Bancorp failed to notify customers of overdrafts, despite having the capability to ascertain at the point of sale whether there were sufficient funds in a customer's account. Finally, Bancorp failed to make their customers aware that they can opt out of Bancorp's overdraft policy upon request.

The Swift Complaint asserted claims for breach of contract, unconscionability, conversion, unjust enrichment, and a violation of the Arkansas Deceptive Trade Practice Act. Importantly, Swift sought to represent a class of "[a]ll BancorpSouth customers in the United States who ... incurred an overdraft fee as a result of BancorpSouth's practice of resequencing debit card transactions from highest to lowest."

On February 24, 2016, Bancorp and Swift entered into a settlement agreement. Bancorp agreed to pay $24 million to the class plaintiffs to resolve all the claims, $8.4 million of which was set aside for attorney's fees, plus $500,000 in class administrative costs.

Bancorp notified Federal of the Swift Complaint and sought coverage for both defending the lawsuit, and indemnifying the cost of settlement. Federal denied all coverage.

Bancorp then filed a complaint alleging two breach of contract claims: that Federal breached its duty under the policy to defend against the Swift Complaint and pay attorneys' fees (Count One); and, that Federal breached the duty to indemnify Bancorp for the cost of settlement (Count Two). Additionally, the complaint alleged bad faith denial of coverage by Federal (Count Three). Federal filed a Rule 12(b)(6) motion to dismiss for failure to state a claim on the grounds that Swift's claims regarding the overdraft fees were excluded from coverage under Exclusion 3(n) since the claims were "based upon, arising from, or were in consequence of fees or charges."

The district court found that Exclusion 3(n) unambiguously excludes from coverage losses arising from fees. Accordingly, since the claims alleged in the Swift Complaint arose from the imposition of excessive overdraft fees, the district court ruled that Exclusion 3(n) applied, and Federal had no duty to defend or indemnify. Thus, the district court dismissed the two breach of contract claims, and also dismissed the bad faith claim since there was no longer an underlying contractual breach upon which Bancorp could recover. Bancorp timely appealed.

## II. DISCUSSION

We review *de novo* the district court's order granting a motion to dismiss under Rule 12(b)(6), accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Alamo v. Bliss*, 864 F.3d 541,

548–49 (7th Cir. 2017). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

■ "A federal court sitting in diversity 'must attempt to resolve issues in the same manner as would the highest court of the state that provides the applicable law.'" *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013) (quoting *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416–417 (7th Cir. 1997)). Here, the parties agree that Mississippi law applies, under which "[t]he interpretation of an insurance policy is a question of law." *Noxubee Cty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So.2d 1159, 1165 (Miss. 2004).

■ Bancorp argues that the district court improperly dismissed Count One by exclusively focusing on the allegations in the Swift Complaint regarding the overdraft fees. According to Bancorp, the district court overlooked other allegations concerning Bancorp's general policies and procedures which are the primary sources of harm alleged in the Swift Complaint.

■ Under Mississippi law, the determination of whether an insurance company has a duty to defend depends upon the comparison of the language contained in the policy with the allegations contained in the complaint in the underlying action. *Minnesota Life Ins. Co. v. Columbia Cas. Co.*, 164 So.3d 954, 970 (Miss. 2014). Thus, we must compare the policy language, in particular Exclusion 3(n), which excludes from coverage any claim "based upon, arising from, or in consequence of any fees or charges," with the allegations contained in the Swift Complaint.

To support its argument that the injuries asserted in the Swift Complaint were primarily caused by Bancorp's general policies and practices, Bancorp points to a variety of paragraphs in the Swift Complaint that, on their face, have no mention of overdraft fees. For example, paragraph 35 alleges:

> BancorpSouth misleads its customers regarding its reordering practices, as the Bank does not state unequivocally in its contract that it will reorder debits from highest to lowest. Thus, the Deposit Agreement is deceptive and/or unfair because it is, in fact, the Bank's practice to always reorder debits from highest to lowest.

However, these individual allegations cannot be read in a vacuum, and instead, must be read in the context of the entire complaint. Immediately preceding the above allegation, the Swift Complaint ties the deceptive Deposit Agreement and reordering practice directly to Bancorp's maximization of overdraft fees: "In an effort to maximize overdraft revenue, BancorpSouth manipulates debits from highest to lowest during given periods of time. BancorpSouth reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge . . . ."

Read in its entirety, the only harm alleged by the Swift Complaint is Bancorp's maximization of excessive overdraft fees on its customers. The very first paragraph of the Swift Complaint specifically states that the crux of the lawsuit centers on Bancorp's "unfair and unconscionable assessment and collection of excessive overdraft fees." Moreover, the complaint defines the class of plaintiffs as customers who "incurred an overdraft fee." Finally, every claim for relief asserted is specifically premised on the imposition of overdraft fees. To be sure, language focusing on

"overdraft policies and procedures" appears in a number of places, but it is always connected with the wrongful collection or imposition of overdraft fees.

Accepting Bancorp's argument that the primary harm alleged is Bancorp's general policies and procedures would require us to uncouple allegations, read them in isolation, and disregard their context. When the Swift Complaint details a particular Bancorp policy or practice, such as failing to provide customers with accurate balance information, it still directly relates to the underlying harm—the assessment and collection of excessive overdraft fees. In other words, there is no policy or practice alleged that exists independent of the overdraft fee scheme. As the district court rightly concluded, the gravamen of the Swift Complaint is the imposition of overdraft fees, and the allegations in the complaint detail particular policies and practices that assisted in maximizing the assessment and collection of overdraft fees.

The parties directed us to two unpublished opinions from our sister circuits which reached opposite conclusions when confronted with a similar set of facts, although neither of them dealt squarely with Mississippi law. A case from the Fifth Circuit, relied on by Bancorp, analyzed whether an insurer was obligated to provide coverage based on a similar complaint alleging an "unfair and unconscionable assessment of excessive overdraft fees[,]" and a nearly identical exclusion of claims "based upon, arising out of or attributable to any dispute involving fees or charges...." *First Cmty. Bancshares v. St. Paul Mercury Ins. Co.*, 593 Fed.Appx. 286, 288 (5th Cir. 2014) (applying Texas law). Crucial to the Fifth Circuit's holding that the insurance company owed a duty to defend was its finding that the primary harm was not the assessment and collec-

tion of fees, but rather, "that customers could not ascertain their account balances and could not accurately plan spending, withdrawals, and deposits." *Id.* at 290. Yet, as the district court here concluded, the overdraft fees in the Swift Complaint were not an additional harm among many. The excessive overdraft fees were the central and only harm.

More persuasive is the case from the Third Circuit, relied on by Federal, which reached an opposite conclusion involving a policy exclusion for "fees, commissions or charges for Professional Services paid or payable to an Insured." *PNC Fin. Servs. Grp., Inc. v. Houston Cas. Co.*, 647 Fed. Appx. 112, 120 (3d Cir. 2016) (applying Pennsylvania law). In finding no duty to indemnify, the Third Circuit concluded that the essence of the claims resulted from the bank's policy of charging overdraft fees. *Id.* at 121. The court specifically noted that the class was defined as those who incurred an overdraft fee, and that the settlement payments were based on the number of overdraft fees incurred. *Id.*

The essence of the Swift Complaint is clearly Bancorp's maximization of overdraft fees. Since there is no other way to construe the Swift Complaint, Federal had no duty to defend the overdraft fees claims because they are excluded from coverage. The district court correctly dismissed Count One.

It is worth noting that an insurance company's decision in a banker's liability policy to exclude losses "based upon, arising from, or in consequence of fees" serves a necessary purpose of avoiding a "moral hazard." *See, e.g., A.M.I. Diamonds Co. v. Hanover Ins. Co.*, 397 F.3d 528, 530 (7th Cir. 2005) ("Moral hazard refers to the effect of insurance in causing the insured to relax the care he takes to safeguard his property because the loss will be borne in whole or part by the insurance company.").

If the policy contained no such exclusion, Bancorp could freely create other customer fee schemes knowing that they would be readily reimbursed by Federal. In other words, the amount of coverage would be completely in the hands of the insured, Bancorp, which would be in a position to profit from its bad acts.

Bancorp also argues that the district court erred in finding Exclusion 3(n) unambiguous. Bancorp contends that the district court's broad interpretation of Exclusion 3(n) would render coverage for "Defense Costs," defined in the policy to include attorneys' fees, illusory.

 Under Mississippi law, "insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Noxubee Cty.*, 883 So.2d at 1166. "[W]hen the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Id.* at 1165. Ambiguous or unclear language will be resolved in favor of the insured. *Id.* "Mere disagreement as to the meaning of a policy provision does not render the policy ambiguous." *S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So.3d 735, 744 (Miss. 2013). Rather, "[a]mbiguities exist when a policy can be logically interpreted in two or more ways." *United States Fid. & Guar. Co. of Mississippi v. Martin*, 998 So.2d 956, 963 (Miss. 2008). "[P]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured." *Noxubee Cty.*, 883 So.2d at 1165. However, because insurance policies are contracts, "insurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain and to ensure that rates have been properly calculated." *Id.* at 1166.

 As a threshold matter, there is nothing ambiguous about exactly what is excluded from coverage under Exclusion 3(n). The exclusion itself is plain and ordinary—the policy does not cover claims "based upon, arising from, or in consequence of any fees or charges." The district court correctly rejected Bancorp's argument in the district court about whether this meant fees payable *to* or *by* Bancorp. The exclusion encompasses "any fees," which would reasonably include either type. A broad exclusion of coverage does not equate to ambiguity.

 As to whether the district court's interpretation of Exclusion 3(n) conflicts with the definition of "Defense Costs," Bancorp seems to have misunderstood the policy in an effort to create ambiguity and find a route to coverage. The policy's definition of "Defense Costs" includes "fees," *i.e.*, attorneys' fees. Since Exclusion 3(n) bars coverage for "Loss," which includes "Defense Costs" (a term that includes attorneys' fees) Bancorp argues that Exclusion 3(n) would bar coverage for *any* claim seeking reimbursement of attorneys' fees. This argument is without merit. Exclusion 3(n) only excludes coverage of "Defense Costs," including attorneys' fees, incurred on account of claims against Bancorp that are based upon, arise from, or are in consequence of fees or charges. The exclusion has no effect on Bancorp's recovery of any attorneys' fees on account of claims that are based on something other than fees or charges, such as a claim based on the quality of service provided by Bancorp. We conclude that Exclusion 3(n) is unambiguous.

 Finally, Bancorp argues that the district court erred in dismissing Count Two, the duty to indemnify, without drawing reasonable inferences in favor of Bancorp. Under Mississippi law, the duty to defend is broader than the duty to indemnify. *W.R. Berkley Corp. v. Rea's*

*Country Lane Const., Inc.*, 140 So.3d 437, 442 (Miss. Ct. App. 2013) (citing *Titan Indem. Co. v. Pope*, 876 So.2d 1096, 1101 (Miss. Ct. App. 2004)). Whereas a duty to defend arises whenever an insured faces potential liability under the insurance contract, the duty to indemnify kicks in only when the insured is found liable for something that the policy actually covers. Bancorp's argument assumes Federal had a duty to defend the Swift Complaint in the first place. Because we conclude that defending the Swift Complaint was excluded from coverage, Federal does not owe a duty to indemnify the cost of settling that lawsuit and Count Two was correctly dismissed. *See Evanston Ins. Co. v. Neshoba Cty. Fair Ass'n*, 442 F.Supp.2d 344, 346 n.1 (S.D. Miss. 2006) (stating that "if there is no duty to defend, there can be no duty to indemnify"); *see also Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 693 (7th Cir. 2009) ("Where, as here, the duty to defend is broader than the duty to indemnify, a finding of no duty to defend necessarily precludes a finding of a duty to indemnify.").

Because we conclude that the district court correctly dismissed Counts One and Two, Count Three alleging bad faith denial of coverage was also correctly dismissed since there were no longer underlying claims. *Stubbs v. Miss. Farm Bureau Cas. Ins. Co.*, 825 So.2d 8, 13 (Miss. 2002) ("An insured seeking to recover on a claim of bad faith must first establish the existence of coverage on the underlying claim.").

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order dismissing Bancorp's complaint.