In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-4335

HUNT CONSTRUCTION GROUP, INC.,

*Plaintiff-Appellant*,

*v.*

ALLIANZ GLOBAL RISKS U.S. INSURANCE COMPANY,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:04-CV-01720-DT-TAB—**John Daniel Tinder**, *Judge*.

_____

ARGUED JUNE 8, 2007—DECIDED OCTOBER 1, 2007

_____


Before POSNER, FLAUM, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. Hunt, a construction company, brought this diversity suit governed by Michigan law against the Allianz insurance company, and appeals from the grant of summary judgment in favor of Allianz. The district judge's ground was that Michigan law reads into the insurance policy on which Hunt's suit is based a one-year statute of limitations. Hunt contends that the suit is governed by the six-year statute of limitations applicable to contract actions for which no other limitations period is specified. If the longer statute of limitations applies,

the suit is timely and the decision of the district court must be reversed.

Hunt had contracted with Northwest Airlines to build a major terminal facility at the Detroit airport. Heavy rains interfered with the project, causing millions of dollars of loss, including liquidated damages that Hunt had to pay Northwest for delay in the completion of the project caused by the rains. Hunt claimed that this expense was insured under the "builders risk" policy that Allianz had issued to it, but Allianz persuaded the district court that though called "builders risk" (no apostrophe, though the term could use one), the policy is actually a "fire insurance policy" under Michigan law, which provides that a suit under such a policy "must be commenced within 1 year after the loss or within the time period specified in the policy, whichever is longer." Mich. Comp. Laws Ann. § 500.2833(1)(q). The policy itself specified no time period within which the insured had to sue.

Although the policy that Allianz issued to Hunt covers fire damage (with that coverage defined "as in the standard insurance forms in use in the state where the insured project is located"), it covers almost every other kind of damage that a construction company might encounter as well, and none of the losses for which Hunts asks to be indemnified by Allianz were caused by fire; all were caused by water. To call the builders risk policy a fire insurance policy, and subject it to the 19 separate requirements that the statute imposes on "each fire insurance policy issued or delivered in this state," *id.*, § 500.2833(1), when the damage for which the insured seeks indemnification was not caused by fire, strains the ordinary meaning of the term "fire insurance policy." But the language of insurance contracts is not standard English, so we must press on.

The risks for which insurance is sought cover a wide range, and as a result different types of insurance contract have evolved. Two of the earliest risks for which insurance was offered were fire damage and the loss of cargo at sea. Out of fire insurance evolved "all risks" property coverage. 10A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d § 149:2, p. 149-9 (3d ed. 1998). Out of marine insurance evolved "inland marine insurance." At first, inland marine insurance covered mainly losses to cargo moving on inland waterways. But later it expanded to cover cargo moving by other modes of transportation, because marine underwriters were the only ones that had experience with transportation risks and (the same point, really) because early fire policies excluded coverage when the goods damaged were in transit. Marquis James, *Biography of a Business, 1792-1942: Insurance Company of North America* 285-86 (1976). Later still, inland marine insurance expanded further, to cover property in other transitional states. As a result, builders risk policies ("a form of bundled liability and property insurance that is designed to provide protection to the builder if something goes wrong during the course of construction," Jeffrey W. Stempel, *Stempel on Insurance Contracts* § 25:02[D][2], p. 25-11 (3d ed. 2006)), are considered a form of inland marine insurance even when, as in this case, the construction project has no maritime aspect. E.g., *Village of Kiryas Joel Local Development Corp. v. Insurance Co. of North America*, 996 F.2d 1390, 1392 (2d Cir. 1993); Chartered Property Casualty Underwriters and Insurance Institute of America, *The CPCU Handbook of Insurance Policies* 215 (2d ed. 1996). A construction site, before the building under construction is completed, is a "terminus for cargo"—that is, for the building materials brought to the site and assembled there. John A. Appleman & Jean

Appleman, *Insurance Law and Practice* § 2014, p. 8 (Supp. 2007). So transportation is in the background, and this helps to explain why builders risk insurance is deemed a form of inland marine insurance.

Fire is one of the risks of a construction project against which the Allianz policy insures, but it is only one, and it seems odd, given the evolution of builders risk insurance from inland marine insurance policies, to describe a builders risk policy as a fire insurance policy just because fire is among the risks insured by it. Not that an insurer should necessarily be allowed to escape the statutory requirements for fire insurance by providing fire coverage in a policy that covers other risks as well, especially when we recall that all-risks coverage evolved from the original, narrowly focused fire policies. For example, insurance against fire damage is the major component of homeowners' insurance, Stempel, *supra*, § 15.01[D], at p. 15-11; J. François Outreville, *Theory and Practice of Insurance* 201 (1998) (which is a good example, by the way, of "all risks" insurance), and therefore the protective aim of Michigan's statute could not be achieved if the statute were limited to fire coverage found in policies *called* "fire insurance." Cf. *Wagnon v. State Farm Fire & Casualty Co.*, 951 P.2d 641, 646 (Okla. 1997).

Until 1990, the Michigan legislature, rather than trying to define "fire insurance policy," provided that the "standard fire policy" (with its 19 mandatory minimum provisions) "shall not be required for" a variety of types of insurance, including motor vehicle insurance, aircraft insurance, ocean marine insurance, reinsurance—and "inland marine insurance." Mich. Comp. Laws Ann. § 500.2807(3) (repealed). Any type of insurance that was not exempt was subject to the statutory requirements. So,

for example, since homeowners' insurance was not exempt, insurers could not evade the statutory requirements for fire insurance policies by including, as they usually do, fire coverage in a homeowners' policy rather than in a separate policy called fire insurance. See, e.g., *Borman v. State Farm Fire & Casualty Co.*, 521 N.W.2d 266 (Mich. 1994); *Williams v. Auto Club Group Ins. Co.*, 569 N.W.2d 403 (Mich. App. 1997).

The structure of the Michigan statute implied that any form of insurance that was not exempt was a "standard fire policy," including (were it not exempt) a builders risk policy, and so the 19 mandatory provisions would have to be included even when indemnity was sought for a loss not caused by fire. Cf. *Hitt Contracting, Inc. v. Industrial Risk Insurers*, 516 S.E.2d 216, 217 (Va. 1999). Obviously motor vehicle insurance covers more than fire damage, but had it not been exempted it would have been a standard fire policy and the 19 requirements would have clicked in regardless of which of the risks covered by the policy materialized.

There are intimations that this was indeed the law in Michigan before the statutory revision that gave rise to this suit. *Elsey v. Hastings Mutual Ins. Co.*, 411 N.W.2d 460, 461-62 (Mich. App. 1987) (per curiam); *Bourke v. North River Ins. Co.*, 324 N.W.2d 52, 53 (Mich. App. 1982) (per curiam). But inland marine insurance was exempt, and so builders risk insurance was exempt because it is a form of inland marine insurance, and therefore had the statute not been changed in 1990 (well before Allianz issued the insurance policy in suit to Hunt), Hunt would be home free. But in 1990 the Michigan legislature repealed the exemption. There is no legislative history explaining the reason for the repeal—and certainly no indication that the legislature meant to subject all the previously excluded forms of

insurance to the requirements prescribed for the standard fire policy. Yet it is not so much the absence of legislative history that makes one doubt whether that was the purpose or effect of the repeal as the absence of even an atom of evidence of intent to make a revolutionary change in Michigan's system of insurance. No evidence, for example, that inland marine, ocean marine, aircraft, reinsurance, etc., policies issued in Michigan since 1990 have contained the 19 mandatory requirements for fire insurance. The policy that Allianz issued to Hunt does not contain any of them—which means that Allianz is arguing that the policy it issued to Hunt violated Michigan law!

It is time we took a closer look at the 19 requirements, painful though such a scrutiny is. Here they are:

> (a) That the policy shall provide, at a minimum, coverage for the actual cash value of the property at the time of the loss, subject to all other provisions contained herein.

> (b) That the policy shall provide, at a minimum, coverage for direct loss by fire and lightning and pro rata coverage for 5 days for insured property removed to another location if it is moved to preserve it from damage by a covered peril.

> (c) That the policy may be void on the basis of misrepresentation, fraud, or concealment.

> (d) That property which is not covered under the policy.

> (e) Those perils that are not covered under the policy.

> (f) Those conditions which result in the suspension or restriction of insurance.

(g) A provision for waiving or changing a provision under the policy.

(h) That the policy may be canceled at any time at the request of the insured. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater.

(i) That the policy may be canceled at any time by the insurer by mailing to each insured named in the policy at the insured's address last known to the insurer or an authorized agent of the insurer, not less than 10 days before the cancellation, with postage fully prepaid, a written notice of cancellation with or without tender of the excess minimum earned premium. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The excess, if not tendered, shall be refunded on demand and the notice of cancellation shall state that the excess premium, if not tendered, will be refunded on demand.

(j) That if a loss is payable under the policy, in whole or in part, to a designated mortgagee not named in the policy as the insured, the interest in the policy may be canceled by the insurer by giving to the mortgagee not less than 10 days' written notice of cancellation. If the insured fails to render proof of loss, the mortgagee, upon notice, shall render proof of loss within 60 days after the notice. If the insurer claims that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing the mortgagee's right to sue; or the insurer may pay off the mortgage debt and require an assignment of the debt and of the

mortgage. Subrogation pursuant to this subdivision shall include contractual as well as tort rights of action, but only to the extent of the loss. An action may be maintained by either the insured or insurer or by both of them jointly, to recover their respective portions of the loss.

(k) That the insurer's liability shall not be greater than the pro rata share with other insurance for the peril involved.

(l) The notification requirements when a loss occurs.

(m) That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal

and the compensation of the umpire shall be paid equally by the insured and the insurer.

(n) That the insurer may repair, replace, rebuild, or take the property.

(o) That there can be no abandonment to the insurer of any property.

(p) Except as otherwise provided in section 2845, that the loss is payable within 30 days after receipt of proof of amount of loss.

(q) That an action under the policy may be commenced only after compliance with the policy requirements. An action must be commenced within 1 year after the loss or within the time period specified in the policy, whichever is longer. The time for commencing an action is tolled from the time the insured notifies the insurer of the loss until the insurer formally denies liability.

(r) That the insurer is subrogated to the insured's right of recovery from other parties.

(s) Each fire insurance policy subject to this section shall be effective at 12:01 a.m., standard time, at the location of the property involved.

Mich. Comp. Laws Ann. § 500.2833(1). Some of the provisions seem designed for the protection of unsophisticated persons, such as the typical homeowner ((d) through (j), and (p)), rather than a business firm; others for the protection of insurers of residential property, such as (n), which entitles the insurer to replace or rebuild the property—a provision singularly inapt to damage to a construction site—and the requirement of suit within one year unless the policy otherwise provides. Why would Michigan

want to hamstring commercial relations—relations not between an individual and an insurance company but between two companies (one a builder, the other an insurer)—by imposing a long list of requirements tailored to a different type of insurance?

The solution to the interpretive puzzle lies in another change that the Michigan legislature made in 1990. It amended the preceding section of the insurance statute, Mich. Comp. Laws Ann. § 500.2806, to delete the requirement that insurance companies issue the standard fire policy that incorporated the 19 statutory requirements for fire insurance. With that requirement eliminated, there was no longer any need to exempt forms of insurance that are not exclusively, or, as in the case of homeowners' insurance, primarily, fire insurance though they may cover fire along with the other covered risks. Since 1990, an insurance company has been able to tailor its Michigan policies to the nature of the insurance sought by the insured without having to rely on a statutory exemption. Of course an insurer cannot be allowed to escape the 19 requirements for fire insurance by calling what before 1990 would have been considered fire insurance "inland marine" insurance. But there is no suggestion of that here. The policy that Allianz issued to Hunt is a builders risk policy that before 1990 would have fallen squarely within the statutory exemption for inland marine insurance. Thus, Allianz puts too much weight on the deletion of the exemptions. Even with the deletion (indeed more so), a court must decide whether a policy is a fire insurance policy, because the 19 requirements apply only to such policies. Section 500.2833(1) is explicit about that.

The district court relied for its contrary conclusion on *Villa Clement, Inc. v. National Union Fire Ins. Co.*, 353 N.W.2d

369 (Wis. App. 1984), which held that in Wisconsin "fire insurance" is a "generic" term that encompasses insurance for any damage to property. The same issue had arisen and been decided the opposite way by Oklahoma's highest court in *Wagnon v. State Farm Fire & Casualty Co.*, *supra*, 951 P.2d at 646. The suit in that case was under a homeowners' policy for loss caused by a theft. The policy included fire coverage but much else besides, and the court held that the policy's fire coverage did not convert it into a fire insurance policy. Theft is a "casualty" in insurance lingo, and the Oklahoma legislature had specified a different statute of limitations for casualty insurance.

But these cases are inapposite. The question in this case is not whether a builders risk policy was a "standard fire policy" under Michigan law before 1990; probably it was, for otherwise the exemptions in the pre-1990 statute, such as the exemption for inland marine policies, which include builders risk policies, would have been unnecessary. The question is whether by repealing the exemptions the Michigan legislature intended to subject every provision in a builders risk policy to the 19 requirements applicable to fire insurance, many of which, as we have seen, are unsuited to the other risks that builders encounter. The best understanding of the 1990 amendment is that by repealing both the requirement that all insurance be in the form of a standard fire policy having 19 mandatory provisions *and* the exemptions for forms of insurance for which that policy was ill-suited, Michigan freed insurers to tailor their policies to the particular needs of the insured.

Left open by this discussion is whether, had Hunt's property been damaged by fire, the 19 statutory requirements for fire insurance policies would have applied. Before the 1990 amendment, presumably not, as we can

infer from cases in which claims for fire damage were resolved under inland marine policies without reference to the statutory requirements for fire policies. *Waldan General Contractors, Inc. v. Michigan Mutual Ins. Co.*, 577 N.W.2d 139 (Mich. App. 1998); *Armand v. Territorial Construction, Inc.*, 322 N.W.2d 924, 925-26 (Mich. 1982). As we noted earlier, the terms of inland marine insurance policies did not have to conform to the terms of the standard fire policy. Yet it can be argued from the *Borman* and *Williams* cases, cited earlier, and like cases in other jurisdictions, such as *Woods Patchogue Corp. v. Franklin National Ins. Co.*, 158 N.E.2d 710 (N.Y. 1959), and *Liberty Ins. Underwriters, Inc. v. Weitz Co.*, 158 P.3d 209, 219-20 (Ariz. App. 2007), that the Allianz policy should be deemed to *contain* a fire insurance policy to which the 19 requirements would therefore apply. The counterargument would be that those requirements are intended for the protection of individual property owners (and to some extent for the protection of insurers of their property, notably in the short statute of limitations invoked by Allianz) rather than of builders. Cf. *Morgan v. Cincinnati Ins. Co.*, 307 N.W.2d 53, 54 and n. 2 (Mich. 1981); Stephanie A. Giggetts, *Michigan Civil Jurisprudence: Insurance* § 133, p. 2 (2007). We need not try to resolve this uncertainty in Michigan law, since none of the damage that Hunt is asking Allianz to cover is fire damage.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

No. 06-4335                                              13

A true Copy:

    Teste:

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*